M’Girk, C. J.,
delivered the opinion of the Court.
Titus brought an action of trover before a Justice of the Peace, to recover the value of a steer, and had judgment. Harryman appealed to the Circuit Court, where Titus again had judgment. It appears by a bill of exceptions, that on the trial iri the Circuit Court, the plaintiff, Titus, gave evidence to establish his claim to the steer, and also, gave evidence of trover and conversion in the defendant. The defendant then attempted to prove that he took the steer up as an estray, and that the plaintiff had not paid him nor tendered to him the 37 cents allowed bylaw, as a reward for the taking up.
The first testimony offered by Harryman, to show that he took up the steer as an estray, was the testimony of Gun, the Justice, who' swore that on the third of November, 1832, Harryman appeared before him, and took the oath required by law to be taken by takers up of strays, that he, the Justice, reduced the oath to writing, and had the writing in his possession; the Justice also swore that he had appointed appraisers, who appraised the steer.
The defendant then offered to read in evidence a certified copy from the Justice’s book, to show the description of the steer and the appraisement, which copy is in substance as follows : Notice. Taken up, by Thomas Harryman, as a stray, one steer, of a dark brown color, five years old, marked with a slit in each ear, a star in his forehead, hind logs white, some white on the end of his tail, supposed to be a work steer, no brands perceivable, appraised to ten dollars, by H. W. Burch and James Harryman. Signed, S. Gun, Justice of the Peace, with his certificate that the same was a true copy from his stray book.
The plaintiff’s counsel objected to the reading of the copy, on the ground that it furnished no legal testimony that, the steer was posted according to law. The Court rejected the paper.
Mr. Wilson, counsel for Titus, points out several objections to the paper.
First. It does not appear by the paper that the appraisers were sworn as the law requires they should be j and
Secondly. It does not appear that the appraisers were disinterested householders, as the law requires they should be.
*215 Mr. J. Clark, for Harryman, insists that these things need not appear hy the record made hy the Justice. That the law presumes that the Justice did all the law requires of him to he done, and that the Circuit Court should have presumed so too.
This presumption is useful when properly used. Itisproperto use it only inthose cases where the law does not require a whole detail of a judicial transaction to appear. If in such cases the main conclusion of a transaction appear to be right, the law presumes the details are right also, unless the party interested or injured has had an opportunity, and will show that something was wrong. This has not, in genera], been extended to exparte cases. In such cases it is believad the rule is, that all must appear to be correct.
The law is unwilling to commit the interest of absent parties. It therefore, makes but little presumption in favor of exparte proceedings of any kind:
Having said this'much, we proceed to lay down the rule to be, that the party who seeks to detain property as an estray, must show that he did all on his part, exactly as the law requires it should be done ; and secondly, that he must show that all the law required of the Justice was done by him.
As regards the oath of the party in this case, the Justice swears that he administered the oath to the taker up required by law. This oath, we conceive, need not be in writing, because the law has not required it to be in writing. But the information required of the party when under oath, is to be reduced to writiug, because the law requires that the information to be given by the taker up, as to the color, marks, brands, &c., shall be entered with the appraisement on the stray book of the Justice. See the statute, Revised Code, 755-6, sections 1 and 2.
Nothing appears on the record to show that the Justice did take the description of the steer from the party under oath. Nor does it appear that this description was taken at all from the party; as the law requires this to be done, and as it has not been done, we cannot say the steer has been duly posted; a copy of the Justice’s book of this matter would have satisfied the law, if it showed a description of the stray, and that the information was given under the oath of the party. This evidence, if it existed, should have preceded, or at least accompanied the appraisement offered and rejected, otherwise the appraisement, if ever so good, could not be received in evidence. But the appraisement as it stands, should show of itself, that the appraisers acted under oath, or might be sufficient to show by the Justice’s certificate of the oath, that they acted under oath, or at least it should have so appeared on the trial. It should have also been made to appear that the appraisers had the necessary qualifications, to-wit: That they should be disinterested persons and householders, without which no good appraisement can be made.
This view of the matter establishes the point, that there was no legal taking up of 'an estray in the case. It, therefore, is unnecessary to take any particular notice of the instructions refused by the Court to be given, as required by the plaintiff in error.
There is one instruction which was asked by Harryman and refused by the Court, which it will be proper to notice.
The instruction asked was, that inasmuch as Harryman had a lawful right to take up the steer, and did take him up, he is entitled to 37 cents, allowed by law as a fee for taking up. The party was entitled to this sum, before the owner had any right to demand or recover the property, although he, himself, did not complete the posting *216 of the beast, by none of his own neglect, or the ignorance of the Justice. This instruction the Court refused to give, and we think correctly.
The law gives 37 cents to the taker up for that act. Now if the owner applies for the property within the ten days, he is to have his beast if he will pay the 37 cents; if not, the law authorises the taker up to detain the beast for that reason. But if the owner does not apply for the beast within the ten days, then the taker up is hound to proceed to post the estray ; and if he does not do so in good faith, or should proceed to do it in such manner as not to comply with the requisitions of the law, he is from the end of the ten days a transgressor, and in such case the rule is, that if a thing be begun lawfully, but be carried on or ended unlawfully, the transaction is void from the beginning. If it were not so in this case, the taker up would, if dishonest, only arrest or take up the beast, claim his 37 cents, if any one ever demanded the stray, would claim to them on the ground of a taker up, when, at the same time, he would conceal the means of knowledge from the owner. To allow this fee in this case, would be contrary to the spirit of the stray law, which is so anxious to have all things done right, and in due time, that it imposes a penalty of $20 on a person who shall begin the process of taking up, and not go through with it.
The judgment of the Circuit Court is affirmed with costs.