Cunningham v. Hamill.

CATHARINE CUNNINGHAM, Appellant, v. PETER HAMILL, Respondent.

**Kansas City Court of Appeals, April 30, 1900.**

1. Agistment: LIENS: INSTRUCTIONS: EVIDENCE. A lien for pasturing stock must be based on a contract, expressed or implied, and in the absence of evidence showing such contract there is no authority to submit the theory of a lien to the jury.

Appeal from the Nodaway Circuit Court.—*Hon. C. A. Anthony,* Judge.

REVERSED AND REMANDED.

*P. L. Growney* and *J. C. Growney* for appellant.

(1) Whenever an agister's lien is sought to be enforced against any animal, where such lien is claimed, our statute provides for the filing of a verified statement by the agister, his agent or attorney, setting forth his account. R. S. 1889, sec. 6731. (2) "And in addition to all this, the whole evidence shows conclusively that the parties never intended that plain-

tiff should pay for keeping of the stock; such claim, whether for a lien or any ordinary set-off, must have for its basis a contract expressed or implied." (3) In this case there is not a *scintilla* of evidence to support the theory of an agister's lien, and the error becomes apparent that the case was tried by counsel on one theory and by the court submitted to the jury on another. Workman v. Warder, 28 Mo. App. 1. (4) The instructions given are not based on any evidence in the case; and are inconsistent with any issue tendered by the pleading or evidence. McLachlin v. Barber, 64 Mo. App. 527; Workman v. Warder, *supra*.

*W. A. Blagg* and *A. F. Harvey* for respondent.

(1) Respondent is entitled to his statutory agister's lien which the record in this case fails to disclose that he has at any time waived and was so found by the jury in the trial court. (2) An agister's lien may be enforced by an action under section 6731, of the Revised Statutes of Missouri for 1889, or under sections 6736-7 and 8 of same statute and respondent is not required to file his account as a counter-claim or set-off, as maintained by appellant. Heaps v. Jones, 23 Mo. App. 617. (3) Any proof which goes to show that plaintiff at the time of commencing suit was not the actual owner or was not entitled to the immediate possession is admissible even though it extend to proof of fraud in the acquisition of plaintiff's title or that ownership and right of possession were in a third party. Young v. Glascock, 79 Mo. 574, 576; Pugh v. Williamson, 61 Mo. App. 165; Auction and Com. Co. v. Mason, 16 Mo. App. 473; Cobbey on Replevin, sec. 784, p.416; Penrose v. Green, 1 Mo. 774; Wood v. Ensel, 63 Mo. 193; Harvie v. Turner, 46 Mo. 444; Hoyt v. Greene, 33 Mo. App. 211; Mize v. Bank, 60 Mo. App. 358; Dickey v. Heim, 48 Mo. App. 114. Each animal is liable for the entire charge for keeping all. Young v. Kimball, 23 Pa. St. 193; Yearsley v. Gray, 21 Atlantic Rep. 318.

SMITH, P. J.—This is an action of replevin brought before a justice of the peace to recover the possession of a calf. The case, as disclosed by the evidence, is about this: The plaintiff, a married woman, with money received from her father's estate, purchased a cow, giving her check for the purchase price thereof on the bank in which the money was on deposit. In January, 1898, she directed her husband to take the cow with his horses and turn her in defendant's stalkfield with them. The cow was then with calf. On the sixteenth of March, following, she dropped the calf, here in controversy. On the next day the defendant purchased the cow of the plaintiff's husband for $30, paying his five dollars of the purchase price.

Shortly afterwards, the defendant discovered that there was a chattel mortgage on the cow for $22. He called the attention of the plaintiff's husband to the fact, whereupon the latter directed the former to discharge the mortgage out of the unpaid purchase price, which defendant accordingly did. The defendant later on paid the plaintiff's husband the balance due on the purchase price. The defendant testified that at the time of the purchase of the cow nothing was said about the calf, but as the plaintiff's husband had wanted to sell him the cow previously when he had brought her to his stalkfield, he thought that the purchase of the cow entitled him to the calf, though it had been dropped before his purchase and the plaintiff's husband was not aware of the fact as far as he knew. He further testified that after he had purchased the cow of the plaintiff's husband that he wanted to buy it back and that he (defendant) told him to wait until the calf was old enough to be separated from the cow and he would let him have her.

While the plaintiff's husband did not, in his testimony, deny that he had sold the cow to the defendant, he did testify that the next day after the sale that he notified him that the plaintiff was the owner of the cow and had refused to approve

the sale, In June, following, the plaintiff took the cow out of the defendant's possession but left the calf which latter, however, was also taken away by her a few days thereafter; but as to how or in what manner the calf got into the possession of the defendant the evidence does not show. The plaintiff, being unsuccessful in a trial before the circuit court, brought the cause here by appeal.

Among the errors of which she complains is the action of the court in the giving and refusing of instructions. Her third was refused as requested, but a modification was added and in that form it was given. In its modified form it told the jury: "If you believe from the evidence that plaintiff received, in 1894, $350 by inheritance or bequest, and with a portion of said money, to-wit, the $27, as evidenced by the check in controversy, she bought the cow which gave birth to the calf in controversy, and you find that said cow, while so owned by plaintiff, did give birth to the calf in controversy, then you are instructed, as a matter of law, that said calf was the separate property of plaintiff and not subject to sale or disposition by her husband, unless by her express assent, in writing, and your finding should be for plaintiff. *Unless you believe plaintiff had or requested her husband to take the cow to defendant's farm for pasture on the stalkfields, and that the reasonable charges for keeping the same were equal to or exceeded the value of the calf at the commencement of suit.*" The words added by the court are in italics.

That given for the defendant was as follows: "The jury are instructed that a person who agists—that is, who keeps, feeds or pastures animals, has a lien on and the right to retain the possession of said animals, until the reasonable charges and expenses are paid for the feeding and pasturing said animals. If the jury believe from the evidence that plaintiff was the owner of the cow that brought forth the calf in controversy; that plaintiff requested or di-

rected the witness Thomas Cunningham, to take the cow to the farm of defendant Hamill to be kept and pastured on the stalkfields or otherwise; that said defendant received said cow believing the same to be Thomas Cunningham's cow; that Thomas Cunningham sold or attempted to sell said cow to defendant; that defendant was misled as to the ownership of said cow; that afterwards the plaintiff, Catharine Cunningham, took the calf from Hamill's possession without defendant's consent; that afterwards defendant, by means of a replevin suit or otherwise regained the possession of said calf, then in that case defendant would have a lien on said calf for his reasonable charges and expenses for keeping said cow and calf, and unless you believe from the evidence that the calf at the commencement of this suit, to-wit: June 14, 1898, was of greater value than the reasonable value of agisting said animals, you will find for defendant. And the jury are further instructed that if you believe from the evidence that Catharine Cunningham, at the time she got the cow at the Hamill place or farm, left the calf, intending to give it for keeping the cow, and stated that she expected to give Mr. Hamill the calf for taking care of the cow, you should find for defendant."

The defendant's instruction, it will be noticed, is not much more than an amplification of the theory of the modification of that of plaintiff. We are not satisfied with the theory upon which the case was submitted by those instructions. We discover nothing in the evidence upon which to rest the theory that the defendant had a lien on either the cow or calf. Indisputably, such a lien, to have any existence, must be based on a contract express or implied.

The testimony was uncontradicted that the defendant at each of the two trials of this case before the justice had given his testimony to the effect that he made no claim of any lien for keeping the cow and calf, or either, but claimed he was entitled to the calf because he purchased the cow, and when

giving his own testimony in the court below he was asked if he had not testified as just stated, and in his response thereto declared that he would not testify whether he did or did not give such testimony.   The testimony of the plaintiff's husband was that no charge was to be made for allowing the cow to run on defendant's stalkfield.   Besides this, the defendant himself testified that when the cow was turned into his stalkfield that nothing was said "one way or the other about charges" therefor, and that he never had expected to get anything on that account.   There was only about two months between the time the cow was put in defendant's stalkfield and that at which she dropped the calf.   The value of such pasturage could have been but a trifle, and after the cow began to give milk it is hardly possible that the defendant would charge for keeping her since he had the use of the five gallons per day which she gave.   In the negotiations which the defendant claims he carried on with plaintiff's husband in respect to the purchase and sale of the cow it is not pretended that he ever hinted that he claimed anything for keeping her.   The whole evidence, it seems to us, conclusively shows that the defendant never intended that the plaintiff should pay anything for keeping either the cow or the calf.   And the testimony of Mrs. Schaff, in substance, that plaintiff told her when she took the cow away from defendant's place that she expected to give defendant the calf for taking care of the cow, besides being at variance with that of plaintiff, tends to prove no contract on the part of defendant to charge for keeping the cow.

The instructions required the jury to find the reasonable charges for keeping the cow and to determine whether the same were equal to the value of the calf when there was no evidence whatever to guide them.   It is clear to us that the lien theory was an afterthought that was entitled to no recognition in the instructions of the court.   So far as the evidence shows, the defendant's claim to the calf is based upon

the notion that the purchase of the cow entitled him to the calf.

That part of the defendant's instruction which declared to the jury that if it believed from the evidence that defendant, by means of a replevin suit, or otherwise, regained possession of the calf, then, in that case, defendant would have a lien, etc., was clearly wrong, for there is nowhere in the record the semblance of any evidence on which to base it. It is clear that the case was submitted to the jury upon a theory not authorized by the evidence. The action of the court in respect to the instructions we think improper, and for that reason the judgment will be reversed and the cause remanded. *Ellison, J.,* concurs; *Gill, J.,* not sitting.