BEN MOORE, Appellant, v. THOMAS F. HENSLEY, Respondent.

Springfield Court of Appeals, April 14, 1915.

1. **STRAYS: Animals at Large: Statutes.** Where there was no stock law in force, the act of plaintiff in taking up defendant's hogs without complying with the stray law (Secs. 815-817, R. S. 1909) was unlawful and wrongful.

2. ———: ———: ———: **Trespass.** To acquire any right to the possession of or a special property in a stray, one must take the steps provided by statute. And if one takes up a stray and fails to take such statutory steps relative thereto he will be treated as a trespasser ab initio.

3. ———: ———: **Lawful Fence.** To justify possession of a trespassing stray one must show that he had a lawful fence or that the stray was illegally at large.

4. ———: ———: **Recovery for Taking and Keeping: Statutory Prerequisites.** Where one has taken up stray hogs and kept them without complying with the statutory requirements regarding such action, he cannot rely on an implied contract to pay for feeding such hogs, the owner having done nothing to encourage him to take or keep the animals nor given his consent thereto.

5. **ANIMALS: Statutory Lien for Keeping: When Not Applicable: Strays.** One who takes up and keeps stray hogs without complying with the statute cannot claim a lien thereon for such keep under Sec. 8328, R. S. 1909, such section only giving a lien where there is an express or implied contract between the parties.

Appeal from Wright County Circuit Court.—*Hon. C. H. Skinker*, Judge.

REVERSED AND REMANDED (*with directions*).

*Curtis & Evans* for appellant.

(1) As a rule that to create an agistor's lien there must be a contract between the parties, either express or implied and apply that rule to the facts in this case and it would appear at once that the defendant cannot be entitled to such a lien for the reason that there is not one scintilla of testimony in this entire record that could lead any reasonable person to believe that any sort of a contract existed between these parties for the care and keep of the hogs in question. Cunningham v. Hamill, 84 Mo. App. 393; Powers v. Botts, 58 Mo. App. 1. (2) Unless there is a contract the only way that the defendant could secure this lien would be by complying with the provisions of the stray laws. Art. 9, ch. 6, R. S. 1909, sec. 815. (3) Defendant did not comply with the stray law. He admits he had no lawful fence. Hence he must fail in his contention. Wright v. Richmond, 21 Mo. App. 76; Bayless v. Lefaivre, 37 Mo. 120; Harryman v. Titus, 3 Mo. 303; Crook & Thurston v. Peebly, 8 Mo. 344; Rice v. Underwood, 27 Mo. 551.

*Jackson & Jackson* for respondent.

(1) Section 8238, R. S. 1909, gives a lien for the keeping or boarding the animals. (2) Respondent has a legal right to be paid for fattening said hogs and a lien to secure and enforce the right. Powers v. Botts, 58 Mo. App. 1; again reported in 63 Mo. App. 285. (3) Respondent need only show an implied promise to pay for fattening said hogs. An implied promise establishes his right to the lien. Cases cited, supra.

FARRINGTON, J.—Plaintiff, the owner of four hogs, sued in replevin to recover them from the defendant who held them in his possession. The case was tried by the court sitting as a jury and resulted in a finding that the property belonged to the plaintiff and that he was entitled to the possession thereof, and, further: "The court doth find that the defendant, Thomas F. Hensley, is entitled to the sum of twenty dollars for the care and keep of said property while in his possession. It is therefore ordered, considered and adjudged by the court that the plaintiff recover of and from the defendant the four head of hogs described in plaintiff's petition, and it is further ordered, considered and adjudged by the court that the defendant have and recover of and from the plaintiff the said sum of twenty dollars for the care and keep of said hogs and that the same be adjudged a lien upon said property."

The plaintiff appealed from the judgment of the court, complaining of that portion thereof which adjudges a lien upon the property for twenty dollars and renders judgment against him for that amount.

The facts are that plaintiff owned the four hogs and that he resided a mile or so from the defendant; that some time during the month of October, 1913, these hogs were found in or near defendant's alfalfa field and were turned out of that field into a pasture which defendant afterwards rented for pasturage and mast.

The stock law was not in force, and defendant admits that he was not maintaining a lawful fence. Defendant afterwards took the hogs out of the pasture and put them in a pen where he fed them corn for several weeks. The plaintiff then demanded that they be turned over to him. Defendant declined to do so, but demanded that plaintiff give him two of the hogs for their care and keep or that plaintiff pay him for their care and the feed they had consumed. It is admitted that defendant did not comply with the law relating to strays, such as posting, etc., as required by sections 815, 816 and 817, Revised Statutes 1909.

There being no stock law in force, defendant's act in taking the hogs and keeping them as he did without complying with the stray law was unlawful and wrongful.

It was his duty to keep them off his premises by maintaining a lawful fence. The plaintiff had a right to let them run at large.

It is doubtful from the record whether at the time defendant took up the hogs he had a right to even take them up as strays at all (Sec. 815, R. S. 1909) as the evidence seems to establish that he did so before November the first. But even if he took them up after the first day of November, his possession and retention of the hogs was equally wrongful and unlawful because of l's failure to comply with the requirements of the law with reference to strays. A person to acquire any right to the possession of or a special property in a stray must take the steps provided by the statutes. [Wright v. Richmond, 21 Mo. App. l. c. 79.] And one who does take up a stray and fails to take such steps as the law requires will be treated as a trespasser *ab initio*. [Bayless v. Lefaivre, 37 Mo. 119; Rice v. Underwood, 27 Mo. 551; Crook v. Peebly, 8 Mo. 344; Harryman v. Titus, 3 Mo. 302.]

The object of the law, as stated in Worthington v. Brent, 69 Mo. 205, 207, 208, is as follows: "The ob-

ject of the law was to encourage farmers to take up such cattle and other animals as were found on their plantations at a season of the year when feeding was usually required, and the main purpose was, by small premiums offered to the taker up, to benefit the owner who might in this way be enabled to trace his lost stock."

The defendant failed to do the very thing that entitled the defendant to relief in the case of Cummings v. Ellis, 140 Mo. App. 102, 119 S. W. 512.

It is held in Mackler v. Schuster, 68 Mo. App. 670, that a defendant must justify his possession of a trespassing stray by showing that he had a lawful fence, or that the stray was illegally at large.

To uphold the judgment under an agistor's lien would require that there had been a contract entered into for the keeping, either express or implied. [Cunningham v. Hamill, 84 Mo. App. 389; 2 Cyc. 315, 316, 317.]

It is conceded that there was no express contract between the parties, but it is claimed that there was an implied contract because Owen Gorman, a boy, had seen where the hogs had been in defendant's alfalfa field and had turned them out into Steele's pasture, which pasture defendant afterwards rented; and because Owen Gorman in a few days saw Walter Moore, a son of the plaintiff and part owner of the hogs, and in a conversation described the four hogs he had turned into Steele's pasture and asked Walter if they belonged to him, and Walter said no they didn't own any hogs of that description. This conversation admittedly took place during the time the hogs were out in Steele's pasture and before the defendant put them in his pen and commenced feeding them corn. It is not claimed that Walter saw the hogs but that he said they were not his from the description given by Owen Gorman. The only other witness relied on by defendant in showing an implied contract was William Hake who testi-

fied that Ben Moore, the plaintiff, told him that defendant had taken up some hogs but that they were bigger hogs than his (the plaintiff's).

At the time these witnesses were testifying the defendant was standing on a general denial as well as his special defense of an implied contract and was requiring plaintiff to furnish proof of ownership.

The testimony of these two witnesses does tend to show that the hogs did not belong to plaintiff, but that issue was found for the plaintiff and no appeal was taken from the finding by the defendant.

It seems to us that the testimony related falls far short of tending to show an implied contract—that plaintiff knew the defendant had his hogs and was feeding and caring for them with his consent.

But be that as it may, this plea of the defendant must fail for the reason that he is in no position to rely on an implied contract, even though his evidence had shown that plaintiff knew he had the hogs and was feeding them, and this because, as hereinbefore stated, his act and conduct in taking up and keeping the hogs without complying with the law made him a wrongdoer, and his possession was therefore unlawful. The courts will not recognize a cause of action whereby one will be permitted to profit by his own wrongful and illegal act. Defendant's possession is no different, so far as recovering for the care and feeding of the hogs is concerned, than it would be if he had knowingly and wrongfully taken and converted the stock to his own use (and in fact that was what his act amounted to). It cannot be the law that one can wrongfully convert stock and then recover charges for feeding and caring for it. Broom's Legal Maxims (8 Ed.), lays down the rule that a contract cannot arise out of an illegal act (p. 574), and quotes as follows: " 'those who come into a court of justice to seek redress must come with clean hands, and must disclose a transaction warranted by law' and 'it is quite clear, that a

court of justice can give no assistance to the enforcement of contracts which the law of the land has interdicted.' " [See, also, 18 Cyc. 1499.]

The following language used in the case of Sherwood v. Neal, 41 Mo. 1. c. 425, is pertinent to the point we are discussing: "Neal had no right to part with the possession of the horse, and his act in delivering it to Fox was not only unauthorized, but was actually wrongful. Fox knew this; his knowledge constituted him a wrongdoer, and this ought to, and does, destroy all idea of a lien in his favor for boarding and training the horse."

The evidence shows that while defendant says he did not know these were plaintiff's hogs he did hear that they belonged to the plaintiff and though living but a mile from the plaintiff and seeing him a number of times while in possession of the hogs he never once spoke to plaintiff about them nor sent any inquiry to him as to whether they were his hogs. There is nothing in the evidence to show that plaintiff encouraged the defendant to take up or keep the stock or that he consented thereto, and no reason can be given why one person should be allowed to make another his debtor by feeding another's stock voluntarily, any more than by voluntarily paying the other's debt or his taxes and then attempting to establish a liability on the theory of an implied contract. Mere knowledge in a case of this kind, if in fact there was any knowledge whatever on the part of the plaintiff that the defendant was voluntarily doing these things, would not give rise to an implied contract; and much less is this so when, as here, the person claiming the advantage of an implied contract was a wrongdoer in taking possession of the stock.

Section 8238, Revised Statutes 1909, relied upon by defendant cannot benefit him because there the keeping, etc., contemplates a contract between the parties, either express or implied, and not a state of facts where the animal was wrongfully taken and kept.

Our attention has been called to several cases where courts have held that the evidence establishes an implied contract, but in all of them the person who was claiming the benefit of such implied contract was rightfully and lawfully and not wrongfully acting toward the person or the property of the party sought to be held.

Plaintiff's instructions numbered 1 and 2 should have been given.

The judgment is reversed and the cause remanded with directions to the circuit court to enter a judgment in plaintiff's favor for possession of the hogs.

*Sturgis, J.,* concurs. *Robertson, P. J.,* dissents.