THE STATE ex rel. E. R. CLARK et al. v. C. S. WEST et al.

In Banc, December 1, 1917.

1. **MANDAMUS: Demurrer to Alternative Writ: Admissions and Facts.** A demurrer by respondents to the alternative writ in mandamus confesses the truth of the allegations therein contained, and the facts of the case are to be ascertained from the writ.

2. ———: Discretion: Controlled by Mandamus.  If the county court was not compelled by the statute to make a different order from the one it did make, but was invested with a discretion to exercise judgment in the matter, its action cannot be controlled by mandamus, unless its exercise was palpably arbitrary.

3. ———: County Court Drainage Act: Amendment of 1913: Discretion as to Necessity for Improvement.  Section 5583 of the County Court Drainage District Act of 1913, Laws 1913, p. 272, if considered alone, without reference to the context, or to the succeeding sections of the act, requires the county court to make an order incorporating a drainage district in cases where the owners of a majority of the acres in the proposed district petition therefor. But such a construction would render the next section (Sec. 5584, Laws 1913, p. 273) meaningless and futile, and Section 5583 itself unconstitutional and void.  The two sections must be read together, and when that is done they authorize the county court, even when a petition for incorporation signed by the owners of a majority of the acres in the proposed district is presented, to determine whether or not the improvement is "necessary for sanitary or agricultural purposes, or would be of public utility or conducive to the public health, convenience or welfare," and a determination by the court, after the filing of a remonstrance and an orderly public hearing, that the proposed improvement is not necessary for any of these purposes, cannot be nullified by mandamus.

4. ———: ———: Constitutionality: Who May Raise Question.  The court in construing a statute may take a view of it which renders it constitutional, whether or not respondents, being mere officers, have a right to raise the question of constitutionality, even when a contrary construction would render it invalid.

5. ———: ———: ———: Private Property for Public Use: Judicial Question.  Whether the use to which it is proposed to devote private property by the organization of a drainage district is a public or private use, is a judicial question.

6. ———: ———: ———: ———: No Hearing.  A statute which would authorize the taking of private property for the use of a drainage district without affording the owner an opportunity to have the question of whether the use is a public or private one judicially determined, would be unconstitutional; and a statute which would compel the county court, upon the presentation of a petition signed by the owners of the majority of the acres in a proposed drainage district, to make an unconditional and final order incorporating such district with powers to construct ditches and levees, and levy taxes on all lands therein to pay for same, with no opportunity on the part of the owners of the remaining acres to be heard on the question of the necessity and public utility of such improvement, would be such a statute.

272 Mo.—20

## Mandamus.

WRIT DENIED.

*N. M. Bradley* and *W. D. Summers* for relators.

(1)    Section 5883, as amended, says: "If the court finds that the owners of a majority in acreage of the proposed district are petitioners, or have joined in prayer of said petition for said district or improvement, by motion, then the court shall . . . find in favor of making the improvement." Reagan v. County Court, 226 Mo. 79. (2)    Mandamus is the proper remedy in this case. State ex rel. v. Cramer, 96 Mo. 84; State ex rel. v. Public School, 134 Mo. 307; 26 Cyc. 162; State ex rel. v. Brown, 172 Mo. 374; State ex rel. v. Buhler, 90 Mo. 560; State ex rel. v. Phillips, 97 Mo. 331. "It has been said that it would be a monstrous absurdity in a well-organized government that there should be no remedy, although there should appear a clear and undeniable right." State ex rel. v. County Court, 48 Mo. 475; Sheridan v. Fleming, 93 Mo. 321; State ex rel. v. County Court, 41 Mo. 225; In re Dunklin County v. Distr. Co., 23 Mo. 449; State ex rel. v. McCracken, 60 Mo. App. 651. "Ever since the 12 Mo. 166, mandamus has been regarded as the proper proceeding to compel recalcitrant county courts to do their duty." State ex rel. v. Fraker, 166 Mo. 140; citing Riley v. City, 31 Mo. App. 439. "Hearing evidence does not convert the matter into a judicial inquiry." State ex rel. v. Guinote, 113 Mo. App. 407; State ex rel. v. Reynolds, 121 Mo. App. 699. The county court can be required by mandamus to do their duty. State ex rel. v. Butler County Ct., 164 Mo. 214; State ex rel. v. Patterson, 207 Mo. 129. Section 5583, withholds the right to remonstrate, if a majority sign the petition, and makes it mandatory that the county court incorporate the ditch. Laws 1913, p. 271. "A formal finding or declaration of the necessity of improvements is not necessary, unless the statute specifically requires the same." 2 Page & Jones on Taxation, secs. 803, 832; Joplin v. Freeman, 125 Mo. App. 717; State ex rel. v.

Grim, 220 Mo. 489; State ex rel. v. Bidwell, 136 Mo. App. 503; State ex rel. v. Keeze, 40 Mo. App. 650. (3) The constitutionality of a law is never presumed and it must be shown clearly to be unconstitutional. State ex rel. v. Pike County, 144 Mo. 275. General allegation that a statute is unconstitutional does not raise the issue. The provision of the Constitution violated must be pointed out. Ash v. Independence, 169 Mo. 77; State ex rel. v. Smith, 176 Mo. 44. (4) The respondents, not being personally interested and their rights not being affected, cannot raise or urge the question of the constitutionality of the statute. The demurrer admits that the question was not raised by the objectors in the county court, and the respondents cannot urge the same for them here. 25 Am. & Eng. Ann. Cases, 151; State ex rel. v. Williams, 232 Mo. 56.

*J. R. Nicholson, A. A. Whitsitt, J. S. Brierly* and *T. N. Haynes* for respondents.

(1) Before the county court had the power to incorporate the proposed drainage district it was necessary that they should hear evidence in addition to the report of viewers, as to whether or not the proposed improvements were necessary and conducive to the public health, convenience or welfare, or would be of public utility and benefit. R. S. 1909, sec. 5578. (A) In order that the court might be correctly informed to pass upon the questions and matters necessarily required by section 5578 to give the court jurisdiction and power to act and incorporate, the statute provides that the court shall appoint viewers and an engineer who shall report their findings in writing, with such maps, profiles and drawings as are necessary to advise the court, and that after the report of viewers is filed the court shall hear and determine the petition, the report of viewers and the grievances set forth in the remonstrance. Secs. 5583 and 5584, Laws 1913, p. 271. (B) The report of viewers is advisory only as to the matters set forth in their report, and is not binding upon the court. State ex rel. v. Taylor, 224 Mo. 475;

Drainage Dist. v. Railroad, 236 Mo. 107.    (C)   In the
county court proceedings it was incumbent upon relators
to satisfy respondents, sitting as such county court, as to
the practicability of the proposed improvements, and
whether or not such proposed improvements were
necessary and conducive to the public health, convenience
or welfare, or would be of public utility and benefit; to do
this it was necessary that respondents, sitting as such
county court, hear evidence as to the questions of fact at
issue; and repondents, having heard the evidence and
made a finding, as alleged in relators' petition, their acts
in so doing were judicial, and whether the conclusions
arrived at were right or wrong, they are not subject to
review by mandamus. Heman v. Flad, 108 Mo. 614; State
ex rel. v. Broaddus, 209 Mo. 107; State ex rel. v. Hudson,
226 Mo. 239; State ex rel. v. Gentry, 112 Mo. App. 589;
State ex rel. v. Oliver, 116 Mo. 188; State ex rel. v. Thorn-
hill, 174 Mo. App. 469; High on Extraordinary Remedies,
230, 102; 18 Ruling Case Law, p. 124, sec. 38; State ex rel.
v. Johnson, 266 Mo. 662; State ex rel. v. Jones, 155 Mo.
576; 26 Cyc. 158-161; In re Drainage Dist., 90 Wis. 301;
Fleming v. Hall, 73 Iowa, 592.    (2) If, as contended by
relators, the word "shall" as used in Sec. 5583, R. S. 1909,
as amended by Laws 1913, p. 272, be construed to make it
mandatory upon the county court to grant the prayer of
the petition and incorporate the drainage district upon a
finding by the court that the majority of owners in
acreage are petitioners, or join in the prayer of the
petition, regardless of a finding by the court as to whether
or not the proposed improvement shall be conducive to
the public health, convenience or welfare, or where the
same will be of public utility or benefit, and necessary to
drain any lots, lands, public or corporate roads or rail-
roads, as required by section 5578, then said act attempts
to usurp the judicial functions of the courts, and is null
and void, because violative of the provisions of both the
Federal and State Constitutions. U. S. Constitution, sec.
1, art. 14, second subdivision of article 6, and secs. 1 and
2, art. 3; Mo. Constitution, sec. 20, art. 2, section 30 of
article 2, subdivisions 17 and 33 of section 53 of article 4;

and section 1 of article 6; Savannah v. Hancock, 91 Mo. 54; Mining Co. v. Joplin, 124 Mo. 129; Aldridge v. Spears, 101 Mo. 400; Mills on Em. Domain, sec. 11; Lewis, Eminent Domain, sec. 238; 10 R. C. L., p. 18, sec. 15, page 30, sec. 27; 15 Cyc. 580; Cooley on Constitutional Lim. (7 Ed.), pp. 132, 244; 9 R. C. L., p. 623-4, secs. 8 and 9; 6 R. C. L., pp. 453, 456.

FARIS, J.—This is an original proceeding by mandamus, whereby relators seek to compel respondents, as judges of the County Court of Cass County, to make an order organizing certain lands of relators and others situate in Cass County into a drainage district, under the provisions of article 4, chapter 41, Revised Statutes 1909, as amended by an act approved March 27, 1913. [Laws 1913, pp. 271-281.] This is the County Court Act, so-called to distinguish it from a similar but procedurally different proceeding whereof the jurisdiction lies in the circuit courts.

Upon the issuance of our alternative writ respondents demurred, thus in effect confessing, for the purpose of this inquiry, the truth of all allegations contained therein. The facts in the case are therefore to be found in the alternative writ. This writ is lengthy and since no point is made touching its form, we may more briefly state the facts by epitomizing it and making excerpts from it. Reached in this way, the facts run thus: Petitioners are the owners of certain swamp and overflowed lands situate on and along Big Creek, in Cass County, Missouri; desiring to ditch and drain said lands, and having in contemplation the construction of ditches and improvements more than five miles in length, petitioners to the number of more than five, being the owners of a majority in acreage of the lands in the proposed district, filed with respondents, as members of the County Court of Cass County, a petition with the necessary allegations touching the nature of the proposed improvements and the route and termini of the same. They likewise filed a proper bond, which was approved by respondents. Respondents thereupon, as such court,

appointed three disinterested freeholders, and an engineer, who properly qualified and proceeded to view the lands proposed to be embraced in the district. Said viewers and engineer found, and so reported to the respondents, that the proposed improvement was necessary, practicable, and would be of public utility, and conducive to the public health, convenience and welfare. The viewers and engineer also indicated in and by their report the character, dimensions, location and probable cost of the drainage necessary to accomplish the objects of the petition.

After the filing of the report of the viewers and engineer, respondents made the proper orders of record, and caused a proper notice to be given by publication in a newspaper of the pendency of said petition, together with such other facts as are required in that behalf by the statute, and fixed a day at which the petition and the report of the viewers would be heard. Upon the day so fixed for the hearing of the petition "a remonstrance was filed by persons interested in land that would be affected by said proposed ditch and improvement, in which said remonstrance it was admitted that the proposed improvement contained swamp and overflowed land," but said remonstrance objected to the location of the improvements, as fixed by the petition and viewers' report, and set forth other grievances. Respondents thereupon proceeded to hear both the petitioners and the remonstrators, and at the conclusion of the hearing dismissed the petition, as will appear by their order made in the premises, which in full reads thus:

"Now on this 6th day of December, 1916, the day set for the hearing of the petition, the report of the viewers heretofore appointed thereon and any objections on the part of any of the landowners within the boundaries of the proposed drainage district who might remonstrate or object to the proposed improvement and report of viewers, and it appearing to the court that due notice of the filing of said report was given

according to law, and come now the petitioners and also T. J. George, W. W. Linn, N. Mickelson, T. W. Dean, Clara Reed, Addie Harris, C. L. Harris, M. Gray, Mark H. Beamer, N. N. Mills, G. W. Everett, H. K. Templeton, J. A. James, S. A. Thompson, Edna and W. E. Templeton, H. H. Sides, O. T. Souther, as remonstrators, and filed herein their remonstrances and objections to the formation and incorporation of said proposed improvements, and thereupon this cause is by the court now taken up for hearing and the court having heard the pleadings, evidence and arguments of counsel and being fully advised in the premises, doth find that the petitioners, and those joining by motion in the prayer of said petition, own a majority of the acreage of the lands within the boundaries of said proposed district, and the court doth further find by the great preponderance of the evidence adduced that the proposed ditch, levee and other improvements are not necessary for sanitary or agricultural purposes, nor would they be of public utility, nor conducive to the public health, convenience or welfare nor are they practicable and the court doth find against such proposed improvements and doth dismiss the said petition and proceedings at the cost of the petitioners.

"It is therefore considered and adjudged by the court that the petition and proceedings be and the same are hereby dismissed and that remonstrators go hence without day and have and recover from and against the petitioners as follows: E. R. Clark, L. W. Bixler, S. R. Sankey, James S. Gosnell, Louise Naden, H. H. Hodgson, E. S. Burroughs, Ema Schappert, G. W. Lightner, U. J. Groves, M. E. Seaton, J. R. Beasley, Mabel Beasley, S. V. Tobin, Nellie Tobin, O. H. Beasley, D. E. Nichols, Mary Nichols, Geo. Dahman, John T. McDaniel, Pearl McDaniel, L. B. Singleton, O. E. Burris, H. J. Dahman, Millie Schmoll, Geo. W. Davis, Essie B. Hodgson, S. N. Mills, S. J. Mills, W. C. Johnson, R. B. Bronough, Independence Hunting Club, by Saml. H. Woodson, Pres., Attest. H. A. Major, Secretary, Jessie L. Kerr, by Chas. C. Clasby with

power of attorney, all costs and charges herein laid out and expended and that due process issue in this behalf.''

Thereupon E. R. Clark, and thirty-seven others, averring that it is the bounden duty of respondents, as judges of the County Court of Cass County aforesaid, upon the showing by them made to make an order organizing the proposed drainage district as a body corporate, and that they are remediless in the premises by and through any ordinary process or proceeding at law, prayed our writ of mandamus commanding respondents to find in favor of making the improvements, and in favor of incorporating said proposed district as a body corporate. Upon filing the above petition we issued our alternative writ, to which as stated, respondents have duly demurred, and therefore this case is here for determination upon the law applicable to the facts averred in the alternative writ. To the law of the case then we will address ourselves.

The order of the county court, made by respondents as judges thereof, conclusively shows that the county court refused to organize the proposed drainage district,

Discretion as to Necessity.

because it found ''by the great preponderance of the evidence adduced that the proposed ditch, levee, and other improvements, are not necessary for sanitary or agricultural purposes, nor would they be *of public utility,* nor conducive to the public health, convenience or welfare, nor are they practicable.'' Thereupon, and for the reasons quoted, respondents dismissed the petition and proceedings at the cost of the petitioners therein.

Relators, as we understand their position, insist that the amendment of 1913 (Laws 1913, p. 272), by providing that ''if the court finds that the owners of a majority in acreage of the proposed district are petitioners, or have joined in prayer of said petition for said ditch or improvement, by motion, then the court shall, or if less than a majority, the court in its discretion may find in favor of making the improvement,'' in a case which meets the conditions stated, has made it a mandatory and merely ministerial duty of the county court to order the

incorporation of the district. Since, therefore, the petition presented to the county court in the case at bar contained the names of the owners of a majority of the acreage to be embraced in the proposed district, there was left in the county court no discretion whatever, and it became its mandatory duty to make the order. Stating their position thus relators earnestly insist that mandamus will lie, and that our alternative writ herein should be made peremptory.

Respondents contend, among other things urged, that the amendment of 1913 did not so change the statute as to take away from the county court all discretion and make of the duties incumbent merely ministerial acts; hence they urge mandamus will not lie. They also contend that if the statute does have the effect to shear the county court of all discretion to determine questions of public welfare, health, utility, convenience and sanitation, then the statute is unconstitutional. This, for the reasons, (a) that it permits private persons to determine these questions of public use for themselves, and through the resultant construction of ditches on and across, and by levying taxes against, the lands of non-consenting citizens, takes the property of the latter without due process of law, (b) and that such a taking lacking a judicial determination of public utility would constitute the taking of the private property of a citizen for a private use.

As we gather the trend of relators' argument, they do not contend that mandamus will lie, if the statute has left in the county court any discretion, or if there are left to be determined any questions of fact; but in such case they tacitly concede that it will not lie. If they do not concede this, the settled law which governs the issuance of the writ of mandamus concedes it for them. Bearing in mind that the county court did act, and did by the action it took refuse to organize the district upon the ground that the improvement prayed for did not involve matters of public use, and others involving a lack of public interests, which appears from the excerpt quoted from their order, we think there can be no doubt that if the court had any discretion left in it, and to be exercised

by it before it made the order which it did make, mandamus will not lie. Mandamus in such case will lie to compel the taking of action, but it will not lie to dominate the nature of the action to be taken, nor to compel the taking of action contrary to that already taken. [State ex rel. v. Jones, 155 Mo. 570; State ex rel. v. Oliver, 116 Mo. 188; State ex rel. v. Board of Health, 103 Mo. 22.] This rule is well settled and is stated with much accuracy and more at length in a late work upon this subject, thus:

"It is a well recognized rule that where the performance of an official duty or act involves the exercise of judgment or discretion, the officer cannot ordinarily be controlled with respect to the particular action he will take in the matter; he can only be directed to act, leaving the matter as to what particular action he will take to his determination. Therefore, where an officer, in the exercise of a discretionary power, has considered and determined what his course of action is to be, he has exercised his discretion, and his action is not subject to review or control by mandamus." [18 R. C. L. 124.]

To this rule the only exception is that in some cases where discretion is involved and has been exercised, the law will yet afford relief by mandamus, when there has been a palpably arbitrary exercise of the discretion given in the very face of the law and of the conceded facts. [State ex inf. v. Talty, 166 Mo. 529; State ex rel. v. Harris, 176 S. W. 9; State ex rel. v. Adcock, 206 Mo. 550; 18 R. C. L. 126.] But for reasons which are fairly apparent, we do not think the facts here present bring this case within the exception noted. Which brings the argument back to a consideration of the amendment of 1913, and the effect of this amendment upon the duty to exercise discretion, with which the applicatory statutes concededly vested the county court before they were amended. This question is decisive of the case.

After a careful consideration of these statutes, and after construing them *in pari materia,* we are constrained to hold that they still make it the duty of the county court to exercise its discretion in any case and to make a finding (after hearing the evidence upon the question if

necessary), whether the improvements prayed for are "necessary for sanitary or agricultural purposes, or would be of public utility or conducive to the public health, convenience or welfare." We reach this conclusion because (a) the amendment of 1913, itself, specifically says that if the county court shall find the above matters and things, it shall cause such finding to be entered upon the record of the court, and shall direct said viewers and engineers (Laws 1913, p. 272) to proceed to locate the improvements, make surveys, and make and file a schedule of the lands which will be benefited, damaged or condemned, etc., and because (b) any other construction, or the construction contended for by relators, would in our view inevitably render Section 5583, as amended by the Act of 1913 (Laws 1913, p. 272), unconstitutional and void. We discuss these propositions in their order.

Reading amended Section 5583, alone, and without reference to the context, or to the succeeding section of the same act, we would be forced to conclude that the Legislature intended to make mandatory a finding in favor of the incorporation of the district prayed for, in all cases wherein *the owners of a majority of the acreage* in the proposed district petitioned therefor. Such a view would render meaningless and wholly unnecessary the provisions of Section 5584, as amended (Laws 1913, p. 273), for, manifestly, if the county court is to be compelled to incorporate a drainage district in every case wherein a majority of the owners of the acreage ask for such incorporation, any consideration of whether the improvement is "necessary for sanitary or agricultural purposes, or would be of public utility or conducive to the public health, convenience or welfare," goes out of the case, and such finding (though the statute still says *it is a condition precedent* to the making of further orders in the case), is a wholly vain and futile thing. It seems impossible to reconcile these two sections with the view that the Legislature intended to take from the county court all discretion, and in effect vest in the owners of a bare majority of the acreage the right of passing upon

these important questions of whether a public interest is involved, or a public use is to be subserved by the proposed improvement. Since it is not number of individual owners of tracts of land, but the *owner or owners of a majority of the acreage* in the proposed district, who are to be considered, it becomes possible (upon the view that the Legislature by the amendment ousted the county court of all discretion in the premises), for one single landowner to force the organization of a drainage district containing a five-mile ditch, and five or more such owners to force the organization of an improvement of any size or cost, over the protest of hundreds of other owners who together own but a bare minority of the acreage. At the same time such single owner would be, and under the view taken by relators, is in effect empowered to pass upon the question of whether the proposed improvement is necessary for sanitary or agricultural purposes, and whether it would be conducive to the public health, convenience or welfare. And such owner determines and forecloses these questions by his act of filing a petition and procuring thereon a mere preliminary and cursory report of the viewers and engineer. For automatically these findings follow the view urged on us by relators, without the necessity of taking evidence upon the question, and without the necessity of any court or other public body possessing judicial functions passing upon the matter.

This view that the Legislature must have intended to leave to the county court, and not to the owner or owners of a majority of the acreage, the discretion to determine the existence of the public use is also aided by the fact that amended Section 5583 (Laws 1913, p. 272), provides for the filing of remonstrances against the organization of the district, wherein the grievances of the remonstrators shall be set forth in writing. If it is mandatory upon the county court to organize every proposed district, and if they have no discretion otherwise, when one owner, or five or more owners of a majority of the acreage petition therefore, it is difficult to perceive what relevant matters could be urged by the remonstra-

tors, which would be of any force and effect in preventing
the organization of such district.  Section 5592, Revised
Statutes 1909, permits an owner of land to file exceptions
to the report of the  viewers, to have such exceptions
heard, and if aggrieved by the judgment had thereon,
to take an appeal upon the questions of (a.) whether com-
pensation has been allowed for property taken, (b)
whether proper damages have been allowed for property
"prejudicially affected," but nowhere is there any time
or place left, if the contention of relators is correct,
whereat any owner may successfully object or remon-
strate against the organization of the district, for that
the improvements proposed subserve none of the public
uses mentioned in the statute and in our Constitution.  By
Amended Section 5583, supra, such owners may remon-
strate upon the latter ground, and this is the only place
provided in the statute for a remonstrance upon such a
ground; but if the owner of a majority of the acreage
asks for the formation of the district, the county court
upon such a view would have no discretion to hear any
objection, any remonstrance, or any evidence upon the
contention that the improvement will subserve none of
the public uses set forth in and declared to be requisites
by the statute.  Neither is the legality of the organization
open to collateral attack.  [State ex rel. v. Wilson, 216
Mo. 215; State ex rel. v. Blair, 245 Mo. 680; Barnes v.
Construction Co., 257 Mo. 175.]

The above discussion demonstrates that if the con-
struction of this  amendment urged on us by  relators,
be the proper one, then the amendment is unconstitution-
al.  But it is contended by relators that respondents are
not in a position to raise this question of
Constitutionality.  the unconstitutionalty of the amendment
of 1913, because they are merely officers, and because
they are not themselves personally affected.  This is a
much mooted and disputed question, and the law seems
presently to lean to the view of the relators.  [State ex rel.
v. Williams, 232 Mo. 56.]  But we need not pass and do
not pass upon this precise question.  For this is not ac-
curately the situation presented.  Here we have a section

of the statute, which, by reason of its own language, as well as by reason of conflicting language in both the section preceding and the section following it, is ambiguous. In construing it we are asked to take one view of its meaning, which renders it obviously unconstitutional, and to take another view which saves it from unconstitutionality. This we may do, whether respondents have the right to raise the question of constitutional invalidity or not. We do not pass upon its constitutionality; we simply construe it, and as an aid to that construction, say that if it means what relators contend it means it is unconstitutional. For upon such a view it permits the taking of private property for private use, which is prohibited by the Constitution. [Sec. 20, art. 2, Constitution 1875.] Neither does the procedure provided serve to bring such a taking within the exception here pertinent; that private property may be taken "for agricultural and sanitary purposes." This for the reason that the question whether the use intended to be made of private property, is a public one, is not one to be determined by the Legislature, but is solemnly declared by the organic law to "be a judicial question, and as such judicially determined." [Sec. 20, art. 2, supra.] This question of a public interest, or a public use, must of necessity then be relegated for its determination to some court possessing for the nonce at least the power of judicially determining it, and by its order adjudging it. Under the Constitution this determination of a public use *vel non* cannot be left to the viewers and an engineer; certainly not to these persons when no notice, and no day in court is afforded to those whose property is injuriously affected or taken by the viewers and engineer's report. Neither, we apprehend, ought the one single owner, or the five owners of a majority of the acreage in the proposed district, be permitted to determine this question of a public use for themselves, by the mere act of filing a petition and a bond.

Without doubt the Legislature has the right to declare by a general statute that the drainage of lands for sanitary or agricultural purposes is an act of public utility, that it constitutes a public use. For the Con-

stitution in express terms declares such uses to be public and not private uses. [Sec. 20, art. 2, Constitution 1875.] But the determination of this question in any given instance is necessarily to be relegated to a judicial determination. There is always left to be judicially determined the question whether any particular improvement proposed will inure to the public health or welfare; in short, whether it connotes in the instance at hand a public use of the private property proposed to be taken. In the view of the amendment taken by relators, no provision exists for such determination, and the statute would be void. Since we are enjoined by the ruled cases to so construe an ambiguous or doubtful statute as to preserve if possible its constitutionality (Kenefick v. St. Louis, 127 Mo. 1; Dorrance v. Dorrance, 242 Mo. 625), it is manifest that we can not do this and follow that construction of this amended statute, for which relators contend.

We conclude that as the amended statutes under discussion (Laws 1913, pp. 272 and 273) do not, when construed *in pari materia* and in the light of the Constitution, so change the law as to oust the county courts of all discretion in passing upon the question of whether there is a public use involved, mandamus will not lie to compel the county court to act in any particular way. Since, therefore, respondents have already exercised their discretion and have already passed upon this matter, our writ herein was improvidently granted, and it ought to be quashed. Let this be done.

*Graves, C. J., Bond, Walker, Blair* and *Williams, JJ.,* concur; *Woodson, J., dubitante.*