STATE OF MISSOURI at the relation of WILLIAM VOLKER, JAMES M. KEMPER, ROBERT NELSON SPENCER and JOHN T. HARDING, Trustees, Relators, v. TRUSTON W. KIRBY, County Treasurer of Jackson County.—136 S. W. (2d) 319.

Court en Banc, January 22, 1940.

802

*Paul V. Barnett, James A. Moore, William S. Hogsett, Hale Houts* and *John B. Gage* for relators.

*John B. Pew* and *Rufus Burrus* for respondent; *James W. Broad-dus* of counsel.

GANTT, J.—Original action in mandamus to compel the Treasurer of Jackson County to pay sixty-nine warrants issued by the Kansas City Election Commissioners,,to certain persons employed by the commission to assist in the registration of the voters of Kansas City under Laws of Mo. 1937, page 294. The commissioner, Hon.

Wm. C. Lucas, reported findings of fact and conclusions of law and recommended that a peremptory writ be granted.

 The treasurer of Jackson County is a ministerial officer. Under the general rule he cannot question the constitutionality of a statute fixing his ministerial duties. However, it appears from the record that the fiscal agencies of the county directed him to refuse payment on presentation of the warrants. For this reason he is authorized to question the constitutionality of provisions of the act. [State ex rel. Wiles v. Williams, 232 Mo. 56, 71, 133 S. W. 1.]

The commissioners were appointed November 9, 1937, under Section 3, page 297, Laws of Mo. 1937, they employed persons to assist in the registration. Under Section 89, page 339, Laws of Mo. 1937, they fixed the compensation of said persons. Under Section 92, page 340, Laws of Mo. 1937, they issued warrants on the city treasurer for one-half of the compensation due said persons, and issued warrants on the county treasurer for one-half of the compensation due said persons. The county contended that the commission was without authority to issue the warrants, and the county treasurer refused to pay the same. The commission then certified the pay roll to the county and it issued warrants to the employees of the commission for the month of November, 1937. The warrants were paid by the county treasurer. On certification of the pay rolls for December, 1937, and January, 1938, the county refused to consider the same, contending that the commission was without authority to fix the compensation of the commission. The county fixed $3.50 a day as a basis for compensation and accordingly issued to each of said employees a warrant for $1.75 a day. The employees accepted payment under protest.

The commission had agreed to pay to each of said employees more than $3.50 a day, but not more than $6 a day, the maximum allowed under the statute. In this situation the commission determined the balance due said employees and issued to each a warrant on the county treasurer for one-half of said amount. The county treasurer refused to pay the warrants. Thereafter the employees assigned the warrants to relators who also presented them to the county treasurer and payment was refused. Thereupon relators instituted this action.

 I. Respondent contends that mandamus is not a proper remedy.

It will not be necessary to consider the question. In view of the great expense incident to a commissionership it would be an injustice to rule, after submission of the case, that mandamus was not a proper remedy. [State ex rel. McWilliams v. Bates et al., 235 Mo. 262, 282, 138 S. W. 482; State ex rel. Reynolds v. Highway Comm., 328 Mo. 859, 863, 42 S. W. (2d) 193.] In the McWilliams and Reynolds cases there were heavy commissionership expenses. For that reason, after submission of the case, we did not consider the question.

Absent such expense, we may, after submission, consider the question of remedy. [State ex rel. School District v. Neaf et al., 344 Mo. 905, 130 S. W. (2d) 509.]

■ . II. Respondent also contends that the election law in question violates Section 36, Article VI of the Constitution, which follows: ''In each county there shall be a county court, which shall be a court of record, and shall have jurisdiction to transact all county and such other business as may be prescribed by law. . . .'' In other words, he contends that the election board is conducting county business.

The maintenance of an election board is a state function. Indeed, respondent does not contend that the maintenance of such a board is not a state function. If a state function, the Legislature has the authority to compel the city and county to join in providing for said maintenance. [State ex rel. v. Owsley, 122 Mo. 68, 26 S. W. 659; State ex rel. Lynn v. Board of Education, 141 Mo. 45, 41 S. W. 924; State ex rel. v. Mason, 153 Mo. 23, 54 S. W. 524; State ex rel. Wm. C. Reynolds et al. v. Hy. L. Jost et al., 265 Mo. 51, 175 S. W. 91.]

Respondent cites State ex rel. Buckner v. McElroy, 309 Mo. 595, 274 S. W. 749; State ex rel. Mitchell v. Rose, 313 Mo. 369, 281 S. W. 396. The Buckner case involved the consideration of ''purely county business.'' The Mitchell case involved the consideration of an account presented to the county court as directed by statute. Of course, the county court was authorized to consider and audit the account. The cases are not in point.

■ III. Respondent also contends that certain sections of the registration act are in violation of other provisions of the Constitution.

In the return to the alternative writ, he made an effort to question the constitutionality of said sections. He therein alleged that if certain sections of the registration act be given certain constructions (set forth in the return) they are unconstitutional. The said allegations in the return are admissions that said sections could be otherwise construed. If so, they may be constitutional. In other words, the record does not present a constitutional question for the reason the respondent does not challenge said sections as unconstitutional. The rule is stated as follows:

''To raise that question (a constitutional question), the contention must be that the law is unconstitutional whatever it means and under any construction of which it is susceptible. 'The only challenge of unconstitutionality of a statute which does involve such a question is the claim that the statute is inherently and totally invalid in any event' '' [Moyer et ux. v. Orek Coal Co., 78 S. W. (2d) 107, l. c. 108; Curtin v. Zerbst Pharmacal Co., 333 Mo. 346, 62 S. W.

(2d) 771, 772; Langan v. United States Life Ins. Co., 114 S. W. (2d) 984.]

It is not contended in respondent's brief and was not contended on the oral argument that county funds were not available to pay the warrants in question.

It follows that a permanent writ should be granted. It is so ordered. *Tipton, C. J.*, and *Clark, Hays* and *Douglas, JJ.*, concur; *Ellison, J.*, concurs in separate concurring opinion in which *Leedy, J.*, concurs.

ELLISON, J. (concurring).—I concur in the result reached by the principal opinion but think the ruling in part III thereof is erroneous where it holds the respondent has failed properly to raise certain constitutional questions. I write this separate opinion solely because of the procedural importance of that point.

Relators seek by mandamus to compel the respondent treasurer of Jackson County to pay certain warrants issued by the Board of Election Commissioners of Kansas City to a number of their assistants and employees, under Sections 3, 89 and 92 of Laws of Mo. 1937, page 294, hereinafter called the registration act. Respondent's return first tenders several issues of fact, and then alleges the Act did not repeal certain prior statutes governing the fiscal operations of counties, which latter are claimed to be controlling in the case. Following that it avers that *if* the Board of Election Commissioners have authority to draw warrants on Jackson County free from any restraint on the part of the county court, according to relators' construction of said Sections 3, 89 and 92 of the Act, the sections are, for stated reasons, violative of Section 30 of Article II, Article III and Sections 1 and 10 of Article X of the Constitution of Missouri.

It is these last mentioned allegations of the return which part III of the principal opinion holds insufficient to raise any constitutional question, because they are made conditionally and admit the sections are open to another construction. To be valid, says the opinion, the charge should have been that the sections are *inherently and totally invalid in any event, whatever they mean and under any construction of which they are susceptible.* The authorities cited in support of this ruling are Moyer et ux. v. Orek Coal Co., 78 S. W. (2d) 107, l. c. 108; Curtin v. Zerbst Pharmacal Co., 333 Mo. 346, 348, 62 S. W. (2d) 771, 772; Langan v. U. S. Life Ins. Co., 344 Mo. 989, 114 S. W. (2d) 984.

The cited decisions and others preceding them do go that far. But the rule as thus stated is, in my opinion, much too broad. When a defendant contends that *if* a statute meant what the plaintiff claims it *would* be unconstitutional, and that the court should therefore give it a different construction to save it from unconstitutionality—when that occurs, it is true the defendant has not raised a real constitutional

question. On the contrary he is *affirming* the constitutionality of the statute by saying it should be given a construction which will make it constitutional. In other words, the primary and direct question is one of construction and not of constitutionality. [State ex rel. Clark v. West, 272 Mo. 304, 318, 198 S. W. 1111, 1115.]

But this does not mean that he cannot in any circumstances assail the constitutionality of a statute conditionally or contingently. A plaintiff who founds his cause of action on a statute (also a defendant, as to a statutory affirmative defense) must commit himself to some definite theory of what the statute means, and must bring his case within that meaning; but that is not true of defensive pleas. Under both the common law and our code of civil procedure, a defendant may plead as many defenses as he has, so long as they are not inconsistent to the extent of disproving each other. [49 C. J., sec. 248, p. 212; Sec. 777, R. S. 1929, Mo. Stat. Ann., p. 1022.] Neither is he required to limit himself to a single legal defense, but may show there is no possible legal theory on which the plaintiff can recover under his petition. It necessarily follows, therefore, that he may attack the plaintiff's construction of a statute and at the same time challenge its constitutionality on that construction.

There is no rule that a defendant cannot join a constitutional question with other defenses against a statute. The contrary is indubitably established by the settled doctrine that a court will not pass on the constitutionality of a statute *if the case can be disposed of on other grounds.* [11 Am. Jur., sec. 94, p. 723; 16 C. J. S., sec. 94, p. 213; 12 C. J., sec. 212, p. 780; State v. Rector, 328 Mo. 669, 678, 40 S. W. (2d) 639, 643(7) ; State v. Timeus, 232 Mo. 177, 182, 135 S. W. 26, 27.]

Suppose a plaintiff bases his claim on a statute, and the defendant disagrees with him as to the meaning thereof and also contends the statute is wholly void because the title is double in violation of Section 28, Article IV of the State Constitution. In that situation if the court found for plaintiff on the question of construction it would have to adjudicate the constitutional question, because even under the formula of the principal opinion the statute would be inherently and totally invalid in any event, whatever it means and under any construction of which it is susceptible.

Now take another similar case where the defendant contends: (1) that the true meaning of the statute does not support the plaintiff's claim; (2) and that on plaintiff's construction it violates defendant's constitutional rights, or encroaches on the constitutional powers of some coordinate branch of the government to his prejudice. There, even though the court adopted plaintiff's interpretation of the statute it could not decide defendant's constitutional question because, under the formula of the principal opinion, defendant had failed to charge in substance and effect that the statute was wholly invalid in any

event, whatever it meant and under any construction of which it was susceptible. To get the question decided the defendant would have had to do one of two things: (1) allege the statute was unconstitutional on *both* his own and the plaintiff's construction; (2) or acquiesce in the plaintiff's interpretation as the only one, even though he did not believe in it and the statute was ambiguous. There is no way to give the formula any other meaning.

■ The writer has been unable to find any outside authority anywhere upholding the formula. It is true the rule has often been stated that courts will not determine constitutional questions abstractly or hypothetically. [16 C. J. S., sec. 94, p. 211; 11 Am. Jur., sec. 111, p. 753.] But that only means the challenge must be made in a particular case on specific facts by one who has an interest. It does not mean that a defendant cannot dispute the plaintiff's construction of a statute, and if he be wrong in that at the same time challenge the constitutionality of the statute on the construction advanced by plaintiff and adopted by the court. For these reasons I think the cases cited below* should be overruled so far as in conflict herewith. The Nickell case, first in the list, originated the formula followed by the principal opinion, it seems. That case was decided nine years ago.

■ In the instant case, respondent does not suggest any specific construction of Sections 3, 89 and 92 of the registration act which would deny the right of the Board of Election Commissioners to issue the warrants in question. But he does allege the sections are inapplicable, and that the matter is governed by earlier statutes. Then he pleads that *if* the sections mean what relators say, they *are* (not would be) violative of specified sections of the State Constitution. This, I think, is sufficient to raise the constitutional questions directly, though the pleading is not a model. If not that they must be considered on the question of construction. They tender the only real defense presented. For if the later registration Act is irreconcilably in conflict with the earlier statutes, the latter are repealed by implication.

Since this is a minority opinion concurring in the result, it will serve no purpose to discuss the constitutional questions at length. A mere statement of the grounds of my concurrence will suffice. Sections 3, 89 and 92 of the registration act plainly authorized the is-

---

*Nickell v. K. C., St. L. & C. Rd. Co., 326 Mo. 338, 32 S. W. (2d) 79, 81(5); Service Purchasing Co. v. Brennan (Mo. Div. 2), 32 S. W. (2d) 81, 83(2); Dietrich v. Brickey, 327 Mo. 189, 192, 37 S. W. (2d) 428, 429(5); Woodling v. Westport Hotel Operating Co., 331 Mo. 812, 823, 55 S. W. (2d) 477, 481; State ex rel. Walker v. Locust Creek Drainage Dist. (Mo. Div. 1), 58 S. W. (2d) 452; Chilton v. Drainage Dist. No. 8, 332 Mo. 1173, 1175, 61 S. W. (2d) 744, 745(2); Curtin v. Zerbst Pharmacal Co., 333 Mo. 346, 349, 62 S. W. (2d) 771, 772(3); Moyer v. Orek Coal Co. (Mo. Div. 1), 78 S. W. (2d) 107, 108(3); Langan v. U. S. Life Ins. Co. (Mo. Div. 1), 114 S. W. (2d) 984, 985(3).

suance of the warrants in the suit. The latter consequently were valid unless the statutes were unconstitutional as contended by respondent. Respondent says they delegate unlimited power to the Board of Election Commissioners of Kansas City to appropriate money for their own use and to create subordinate officers, in violation of Article III and Sections 1 and 10 of Article X of the State Constitution. This contention is grounded mainly on State ex rel. Field v. Smith, 329 Mo. 1019, 49 S. W. (2d) 74.

That case construed Sections 7501-7535, Revised Statutes 1929 (Mo. Stat. Ann., pp. 5967-5980), dealing with a Kansas City metropolitan police force. But interspersed through these sections were clauses giving the Board of Police Commissioners authority to exercise certain designated powers ''as they may deem necessary'' or as ''it may deem necessary.'' In other places the word ''necessary'' alone was used. Considering the sections altogether a majority of this court concluded they conferred on the Board unlimited authority and uncontrolled discretion to appoint, equip and pay a police personnel. In the part of the instant registration Act here involved no such broad expressions appear. Even the· word ''necessary'' is used only once, that time in Section 3. Similar language has been used in· the Kansas City election law for many years. This difference plus the fact that the registration act was passed six years after the decision of the Field case, and in the light thereof, justifies the conclusion that there has been no such complete abrogation of legislative power in the sections here under consideration as was found in the police act.

The doctrine stated in a recent unanimous decision by the court en banc is that ''A statute cannot delegate unfettered discretion at large in the legislative field, but must be complete enough to declare the will of the lawmakers within *practicable* limits.'' (Italics ours.) [State ex inf. Crain ex· rel. Peebles v. Moore, 339 Mo. 492, 498-9, 99 S. W. (2d) 17.] Here we have a board charged with supervision over registrations and general, special, municipal and primary elections. The dates for all of these elections except the special elections are fixed by other laws. Knowing that they occur quadrennially and biennially, and that after the initial registration the duties of that work must settle down to a routine increasing some prior to elections, it is evident that the activities of the board will fluctuate greatly, sometimes as a result of an unforeseeable event such as a special election. The size of the working force must be adjusted to those changes. In making them the board of election commissioners does not act *at pleasure*, but as an administrative agency working in a limited field under pressure of external conditions contemplated by the Act. Neither does it create the offices, potentially; but merely brings them into actuality. And as stated in the Crain case, the operative effect of a law may be made to depend on more than one

contingency or on successive contingencies. Illustrations and decisions on the point are cited there.

The power is not despotic, with absolute immunity from judicial review; but the board's decision is prima facie valid and the county court has no independent power to overrule it. This is not only what the statute means, but is the wiser rule. The way would be thrown open for raids on the treasury if such unlimited power were placed in improper hands, but, on the contrary, the legislative purpose would be thwarted if the board were subject to local domination.

Another assignment made by respondent is that Section 92 of the registration Act authorizes the Board of Election Commissioners to audit claims, in violation of Article III of the Constitution, which divides the State government into three distinct departments, executive, legislative and judicial. His theory is that the board is an administrative body but that in auditing claims it exercises a judicial function in violation of the article aforesaid. The doctrine in this State is settled that even a county court (a court of record under the Constitution, Sec. 36, Art. VI) in auditing claims does not act judicially although its action is not purely ministerial because it exercises a discretion. [County of Jackson v. Fayman, 329 Mo. 423, 432, 44 S. W. (2d) 849, 852; Perkins v. Burks, 336 Mo. 248, 253, 78 S. W. (2d) 845, 848.] One case says its functioning in such instances may be deemed quasi-judicial. [State ex rel. West v. Diemer, 255 Mo. 336, 354(5), 164 S. W. 517, 522.] However all the cases agree that its decision does not make the claim res judicata. If this is true of county courts, all the more should it be said of administrative boards which do not purport to be courts. Many boards and commissions in our State government exercise quasi-judicial functions though they do not belong to the judicial department. Yet none of these exist in violation of the Constitution. There is no merit in relator's contention.

For the reasons stated, in addition to those given in the principal opinion, our alternative writ of mandamus should be made peremptory. *Leedy, J., concurs.*