corporation. 19 C.J.S., Corporations, § 845, page 271; 13 Am.Jur. 1018, Sec. 1086; Patzman v. Howey, 340 Mo. 11, 100 S.W.2d 851, loc.cit. 856(2, 3); North St. Louis Christian Church v. McGowan, 62 Mo. 279, loc.cit. 288.

Plaintiff, in his brief under his "Points Relied On", cited Art. I, Sec. 14, of the Missouri Constitution, V.A.M.S. In the argument of the brief he said: "Our Constitution of 1945, in its Bill of Rights—Art. I, Sect. 14—says that the Courts are to be open to every person and certain remedy afforded for every injury to person." We deem it sufficient to say that the courts are open to plaintiff to sue the tort-feasor who is alleged to have caused his injury.

With reference to the case of Pierce v. Yakima Valley Memorial Hospital Ass'n, supra, we note that the Supreme Court of Washington, by a divided court, changed the rule in that state from non-liability of charities in tort actions to that of liability. In this state, we have adhered to the non-liability rule.

■ It was stipulated that the liability insurance policy included within its terms the members of the board and the pastor. Plaintiff, in the argument of the brief, says that by his suit he is not seeking to reach a fund held in trust for charitable purposes, "unless it can be said (looking at it from a practical standpoint) that a liability insurance company is a charity." This court has never suggested that a liability insurance company is to be classified as a charity. What this court has repeatedly held is that although a defendant for his protection carries liability insurance that fact does not enhance his liability in tort actions. Stedem v. Jewish Memorial Hospital Ass'n of Kansas City, 239 Mo. App. 38, 187 S.W.2d 469; Dille v. St. Luke's Hospital, supra; Baker v. Baker, Mo., 263 S.W.2d 29; Haines v. Harrison, 357 Mo. 956, 211 S.W.2d 489, loc.cit. 493. Courts from a number of other states have adopted the same rule. Pierce v. Yakima Valley Memorial Hospital Ass'n, supra; Segall v. Ohio Casualty Co., 224 Wis. 379, 272 N.W. 665, 110 A.L.R. 82, and cases there cited.

■ The trial court ruled correctly in dismissing the plaintiff's petition.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.

All concur.

**STATE ex rel. THOMPSON et al.**

**v.**

**ROBERTS et al.**

No. 44021.

Supreme Court of Missouri.
Division No. 2.

Feb. 8, 1954.

J. Dorr Ewing, Montgomery L. Wilson, Maryville, for appellants.

James P. Dalton, Maryville, for respond-·ents.

BARRETT, Commissioner.

The purpose of this proceeding in mandamus, instituted in the Circuit Court of Nodaway County, is to compel the respondent-appellants as officials and councilmen of the City of Maryville to canvass the votes cast in a special election, to certify the results to the Secretary of State and the County Clerk, and to call another special election for the purpose of electing city officials under the city manager form of government, the proposition voted upon at the special election. After separate alternative motions to quash the alternative writ of mandamus, or to strike portions of the writ, and answers, a hearing was had and the circuit court made the following "finding," " 'Finding for Relator. Alternative writ of mandamus made absolute as to Clyde Roberts, Charles Baird and H. B. Cushman, and quashed as to Zena Hainey.' " Thereafter the appellants, Roberts and Baird, the mayor and a councilman, filed their motion for a new trial which is not set out in the transcript. The motion was overruled and they have prosecuted an appeal to this court.

The Maryville Civic Improvement Coordinating Council, consisting of representatives of a large number of civic "service clubs" sponsored the election. This proceeding was instituted by "Gene Thompson the duly elected, qualified and acting Prosecuting attorney within and for the County of Nodaway and State of Missouri, and Gene Thompson as a duly qualified elector, voter and tax payor of the City of Maryville." Among other things, the petition for mandamus alleges that the City of Maryville in 1919 had a population of more than 3000 and less than 10,000 entitling it to become a city of the third class, and that at a special election held in the year 1919 the city adopted the commission form of government. The appellant-respondents, in their pleadings, set forth the fact that Maryville adopted the commission form of government in 1919, but they said, "Maryville was a City of the fourth class with a population of more than 3,000. The law did not specify that a City of the fourth class that adopted the Commission Form of Govern-

ment would thereby become a City of the third class. One of the questions now in controversy is 'did Maryville become a City of the third class when it adopted the Commission Form of Government?' That question is important as the law also provides that only Cities of the third class can adopt the City Manager Form of Government. Therefore, if Maryville is still a City of the fourth class it cannot legally adopt the City Manager Form of Government and any election held to adopt that Form of Government would be illegal." At another point in their pleadings they state that on March 18, 1880 Maryville became a city of the fourth class and that at no time since that date has there been a proposition submitted to the voters to become a city of the third class, particularly under Sections 72.030 and 72.070, RSMo 1949, V.A.M.S. In short, the issue between the parties is whether Maryville is or became a city of the third class by reason of its having adopted the commission form of government in 1919.

The appellant-respondents have not set forth in their briefs "a concise statement of the grounds on which the jurisdiction of the review court is invoked". Supreme Court Rule 1.08(a) (1), 42 V.A.M.S. The points relied on in their brief, which are to be taken as their "allegations of error" (Supreme Court Rule 1.08(a) (3), are (1) that the writ being directed to individuals instead of to those persons in their official capacity is a fatal defect of parties, (2) that a city of the fourth class, with a population entitling it to become a city of the third class, does not by electing to adopt the alternative form of commission government, thereby become a city of the third class, (3) that the 1919 special city election did not fairly submit to the electors the proposition of electing to become a city of the third class and did not thereby change the classification of the city, (4) that the 1919 special election was illegal and void because there was submitted to the voters a double proposition of (a) electing to become a city of the third class and (b) adopting alternative form of city government, and (5) there being no authority of law

for a city of the fourth class to adopt city manager form of government the 1953 city manager election was void. In the respondent's brief it is said that the question for decision is "whether it was the intention of the Legislature, in enacting the Act of 1913 (Laws Mo.1913, p. 517), to allow a city of the fourth class, with a population entitling it to become a city of the third class, to adopt the alternative commission form established in said Act, thereby acquiring the powers of a city of the third class and remain a city of the fourth class." It is said that the determination of this question depends on whether such an intent and interpretation is or can be constitutional under Article IX, § 7 of the 1875 Constitution. "Because the issues on this appeal cannot be resolved without a judicial determination of this constitutional question, the appeal is taken to this court and the appellate jurisdiction of this court is invoked by both appellants and respondents by reason of the constitutional questions involved. The jurisdiction of the Supreme Court invoked here is the same as in Barnes v. City of Kirksville," 266 Mo. 270, 180 S.W. 545.

█ It may be that this appeal involves some of the same problems presented in Barnes v. City of Kirksville, but the reasons for invoking this court's jurisdiction are far from being the same. In that case reference to the official reports reveals that the parties briefed and argued the constitutional questions relied upon. Reference to the original files reveals that the parties raised the constitutional questions at the earliest possible period, in the plaintiff's reply to the answer, "for further reply plaintiff states that the said Act of the 47th General Assembly, plead by defendant, is null and void and conferred no authority on defendant to do the acts and things alleged by reason thereof; that said act violates section 53 of Article Four of the constitution of this state, in that the said act is a local or special law; that said act violates section seven of Article Nine of the constitution of this state, in that it divides cities into more classes than four; in that it divides cities of the third class and thereby creates a class of cities forbidden by said

section of said constitution." The case was tried upon an agreed statement of facts but the constitutional questions were kept alive and, after an adverse decision by the trial court were again set forth in the motion for a new trial. This is not to overemphasize the technicalities of good pleading, but it is to again point out that "To invoke our jurisdiction on the ground a constitutional question is involved a party must follow four requirements. 1. He must raise the constitutional question at his first available opportunity; 2. he must designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the Article and Section or by quotation of the provision itself; 3. he must state the facts showing such violation; 4. he must preserve the constitutional question throughout for appellate review." City of St. Louis v. Butler Co., 358 Mo. 1221, 1233, 219 S.W.2d 372, 380. There was no attempt to comply with these four requirements upon the trial and submission of this case, no constitutional questions were raised in the answer, the motion for a new trial or elsewhere, and the appellants have not properly briefed any question "involving the construction", Const. Art. 5, § 3, of the constitution of this state in the appellate jurisdictional sense. Hurtgen v. Gasche, Mo., 223 S.W.2d 493; Bushnell v. Mississippi & Fox River Drainage Dist., 340 Mo. 811, 102 S.W.2d 871.

In his brief the relator-respondent points to the constitutional provisions relating to the classification of cities, Const. Mo.1875, Art. IX, § 7, and urges their meaning and effect as applied to this case and its facts. In this connection he contends that the argument of the appellant-respondents concerning Maryville's becoming and remaining a city of the fourth class in 1919, under the 1913 act, is unsound because "Such an interpretation and construction would render the Act invalid and unconstitutional under Art. IX, Sec. 7." But the record does not indicate that the trial court so construed the act, and the relator-respondent does not challenge the constitutionality of the act of 1913, "Respond-

ents' reference to constitutional provisions is an attack upon relator's apparent interpretation of the law, but it does not challenge the constitutionality of any law." State ex rel. Burnett v. School District of City of Jefferson, 335 Mo. 803, 810, 74 S.W.2d 30, 31; State ex rel. Volker v. Kirby, 345 Mo. 801, 806, 136 S.W.2d 319, 321. In determining the merits of this appeal some reference to the constitutional provisions may be necessary, Austin Western Road Machinery Co. v. City of New Madrid, Mo.App., 185 S.W.2d 850, 852, but a respondent's contention that a certain "interpretation would render the act invalid and unconstitutional" does not present a case "involving the construction of the Constitution", Const.Mo., Art. 5, § 3, so as to confer jurisdiction of the appeal upon this court. Moyer v. Orek Coal Co., Mo., 78 S.W.2d 107; Curtin v. Zerbst Pharmacal Co., 333 Mo. 346, 62 S.W.2d 771; State ex rel. Volker v. Kirby, supra; Fred Wolferman Bldg. Co. v. General Outdoor Advertising Co., Mo.App., 30 S.W.2d 157.

This is not to place undue emphasis upon the technicalities involved in jurisdictional problems, the courts of appeal are courts of general jurisdiction, Const.Mo. Art. 5, §§ 11, 13, and this court has such limited jurisdiction as is specifically conferred. Const.Mo. Art. 5, § 3; State ex rel. Office of Civilian Defense Salvation Committee v. Horner, 353 Mo. 838, 184 S.W.2d 1002; State ex rel. Pitcairn v. Public Service Commission, 338 Mo. 180, 90 S.W.2d 392. The grounds for invoking this court's jurisdiction must affirmatively appear, jurisdiction may not be waived or conferred by consent of the parties, Ewing v. Kansas City, 350 Mo. 1071, 169 S.W.2d 897, and upon "want of jurisdiction" appearing, it is the duty of this court to transfer the cause "to the appellate court having jurisdiction thereof." Const.Mo. Art. 5, § 11, V.A.M.S.; V.A.M.S. § 477.080. The courts of appeal have jurisdiction in mandamus, Const.Mo., Art. 5, § 1, V.A.M.S.; State ex rel. Jacobsmeyer v. Thatcher, 337 Mo. 1225, 88 S.W.2d 187, and the fact that the prosecuting attorney of Nodaway County and officials

of the City of Maryville are parties to the action are not grounds for invoking this court's jurisdiction. Const.Mo. Art. 5, § 3; State ex rel. Kirks v. Allen, Mo., 250 S.W. 2d 348; State ex rel. Handlan v. Wilkie Land Co., 349 Mo. 666, 162 S.W.2d 846; Stratton v. City of Warrensburg, Mo., 159 S.W.2d 766. For the reasons noted this court does not have jurisdiction of this appeal, and the cause is transferred to the Kansas City Court of Appeals.

WESTHUES and BOHLING, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.