STATE OF MISSOURI at the relation of MILDRED BURNETT, by EARNEST D. BURNETT and BLANCHE O. BURNETT, her natural guardians and parents, Relator, v. SCHOOL DISTRICT OF THE CITY OF JEFFERSON, a Municipal Corporation, MRS. W. C. IRWIN, OLIVER BASSMAN, STANLEY P. HOWARD, EMIL SCHOTT, IRENE SLATE and SAMUEL BUSHMAN, Members of the Board of Education of said School District, and W. F. KNOX, Superintendent of Schools of said District.—74 S. W. (2d) 30.

Court en Banc, July 31, 1934.

*Baker & Baker* for relator.

*H. P. Lauf* for respondents.

*Edmund·Burke* and *Roy D. Williams* for Moberly School District.

*Roy D. Williams* for Charles A. Lee, State Superintendent of Schools.

*H. L. McCune, Robert S. Eastin,* and *McCune, Caldwell & Downing* for The School District of Kansas City.

*Roy McKittrick*, Attorney-General, and *James L. HornBostel*, Assistant Attorney-General, *amici curiae.*

*Haywood Scott* and *Rodgers & Buffington, amici curiae.*

*Leon P. Embry* and *Harry H. Kay, amici curiae.*

ATWOOD, J.—This is the second submission of an original proceeding by mandamus to compel the School District of the City of Jefferson and its officers to admit Mildred Burnett as a pupil in respondents' high school without the payment of tuition by her or her parents. Respondents waived issuance and service of the alternative writ, consented that relator's petition be taken as and for said writ, and filed return and answer thereto admitting the facts set out therein, but denying that relator is entitled to the relief sought for the reason, among others, that the provisions of law which relator seeks' to enforce do not warrant the relief sought, and for the further reason that such provisions, if construed in accordance with relator's contentions, are violative of certain constitutional provisions. Thereupon relator filed motion for judgment on the pleadings.

▮ Respondents' reference to constitutional provisions is an attack upon relator's apparent interpretation of the law, but it does not challenge the constitutionality of any law. In view of our repeated holdings that such a pleading raises no constitutional question in the sense of conferring jurisdiction on this court (Curtin v. Zerbst Pharmacal Co., 333 Mo. 346, 62 S. W. (2d) 771, 772, and cases there cited), we presume these matters were only pleaded as tending to support respondents' interpretation of the statutes brought in question. In this situation we might well have invoked our rule number 32 and declined, when the petition was first presented, to consider the case. However, having assumed jurisdiction we will proceed to a determination of the issues presented.

The pertinent facts pleaded and admitted are that relator is a minor between the ages of six and twenty years; that she and her parents are residents of School District No. 114, Callaway County, Missouri, a common school district; that the school district of her residence maintains no high school and no classes beyond the eighth grade; that she has completed the course of study provided in her district and is fitted in every way to enter and pursue the courses of study provided in respondents' high school; that the high school maintained by respondents is in an adjoining county and the most convenient high school for relator to attend; that respondents have' denied her admission therein; that the respondent school district is a city school district within the meaning and under the provisions of Article 4 of Chapter 57, Revised Statutes 1929, and all amendments thereto; that it applies for and receives state aid for the maintenance of said high school; that it has not received and will not receive during the current school year the full sum of fifty dollars from the State of Missouri; that the average cost of furnishing high school

education for the current year is seventy-five dollars per pupil; that the school district of relator's residence has paid and is willing and able to pay to respondent district for relator's tuition the sum of twenty-five dollars for the current school year in the manner and upon the terms prescribed by law; that respondents have demanded and now demand that in addition to the sums so paid and to be paid by the school district of relator's residence and paid or to be paid by the State of Missouri, relator or her parents pay to respondent district an incidental fee of three dollars per month; that relator and her parents have refused to pay this fee, and that she is refused admission to the high school conducted by respondents solely because of such failure to pay the same.

The statutes under which relator claims relief are the Laws of Missouri, 1931, pages 334 to 347, both inclusive, and particularly Section 16 thereof as amended and found in the Laws of Missouri, 1933, pages 393 and 394. As enacted in 1931 (Laws 1931, pp. 343, 344) this section is as follows:

"The board of directors of each and every school district in this State that does not maintain an approved high school offering work through the twelfth grade shall pay the tuition of each and every pupil resident therein who has completed the work of the highest grade offered in the school or schools of said district and attends an approved high school in another district of the same or an adjoining county where work of one or more higher grades is offered; but the rate of tuition paid shall not exceed the per-pupil cost of maintaining the school attended, less a deduction at the rate of fifty dollars for the entire term, which deduction shall be added to the equalization quota of the district maintaining the school attended, as calculated for the ensuing year, if said district is entitled to an equalization quota; if the district maintaining the school attended is not entitled to an equalization quota, then such deduction shall be added to the teacher quota of said district, as calculated for the ensuing year; but the attendance of such pupil shall not be counted in determining the teaching units of the district maintaining the school attended; and the cost of maintaining the school attended shall be defined as the amount spent for teachers' wages and incidental expenses. In case of any disagreement between districts as to the amount of tuition to be paid, the facts shall be submitted to the State Superintendent of Schools, and his decision in the matter shall be final: *Provided further,* that when any school district makes provision for transporting any or all of the children of such district to a central school or schools and the method of transporting and the amount paid therefor is approved by the State Superintendent of Schools, the amount paid in state funds for transportation, not to exceed three dollars per month for each pupil transported a distance of two miles or more,

shall be a part of the minimum guarantee of such district: *Provided,* the provision of this act regarding the payment of tuition and transportation shall apply if the students attend any school supported wholly or in part by state funds.''

The foregoing section was amended in 1933 simply by changing the period at the end of the section to a semicolon and adding the following thereto: *"Provided, further,* that in all cases where provision is made for the transportation of school children across school district lines the state reimbursement for same as provided in this section shall be sent directly to the school district providing the transportation.''

On the former submission of this case the first point presented and urged in relator's printed brief and argument was as follows: ''Respondent school district by receiving state aid must admit non-resident pupils without burden or charge to such pupils.'' Relator's counsel filed no subsequent brief but if we understood their oral argument on the rehearing it was to the effect that the pleadings in this case do not involve the question of whether a high school is compelled, if it accepts state aid, to admit nonresident pupils, and that the question determinative of this case is whether or not respondent school district has a right to refuse admission to relator for the sole reason that she and her parents have refused to pay the incidental fee of $3 a month which respondent district has made a condition precedent to the admission of all nonresident pupils. Our impression of relator's present contention is confirmed by the first paragraph of the printed argument of the Attorney-General, who by leave of court has filed brief as *amicus curiae* and in which brief and argument counsel for relator apparently concur, as follows:

''The sole question before this Honorable Court is whether or not respondents have the right to charge relator (pupil) attending their high school a tuition fee? The pleadings in this case do not involve the question of whether a high school is compelled, if it accepts state aid, to admit nonresident pupils.''

It must be conceded that upon rehearing ''a case stands just as if it had not been previously heard and submitted'' (Morris v. Light & Power Company, 302 Mo. 475, 481, 258 S. W. 431), and counsel for relator could on rehearing abandon their contention, made on the first submission, that high schools receiving state aid must admit nonresident pupils. In that case, however, we think our writ would not go. As we have said in State ex rel. Kern v. Stone, 269 Mo. 334, 342, 190 S. W. 601: ''In order that a writ of mandamus may be available, it is essential that the relator have a clear legal right to the thing demanded, and it must be the imperative duty of respondent to perform the act required.'' Counsel for relator, of course, still contend that respondents are without authority to require either

relator or her parents to pay tuition as a condition precedent to her admission, and they argue that since respondents have denied relator admission upon the sole ground of refusal to pay the tuition required of her they have waived all other grounds of refusal and may be compelled to receive her. We do not think relief by mandamus can in this case rest on such a narrow footing. Respondents' position under the pleadings relating to this feature of the case at most means only that they are willing to admit relator if she will pay the tuition ordered. But this does not relieve relator of the burden of showing that it is the imperative duty of respondents to admit her and that she has a clear legal right to enforce performance of that duty. Respondents' willingness to admit upon condition, even though the condition be unauthorized, is not in and of itself an adequate ground of coercion.

It should be noted that on oral argument there were suggestions affirming and others denying that respondents admitted relator and accepted the tuition due from the sending school district as well as a part of that due from the State, but upon learning that no more would be forthcoming from the State they imposed upon relator the tuition or "incidental fee" in question and upon her refusal to pay same she was expelled. It is apparent, of course, that if these were the conceded facts they would present a case wholly different from that arising from refusal to admit this nonresident pupil and refusal to accept payment of any tuition for her. Upon the record submitted we are relegated to the facts pleaded for the facts in the case.

■ The prayer of relator's petition was that the court "issue its writ of mandamus herein directed to and commanding the respondents to admit this petitioner to and in its said high school and to accord to your petitioner all the rights and privileges of a resident pupil of the respondent district." The burden was upon relator to plead and prove a clear legal right to the relief asked. The language of her prayer precludes the idea that she had ever been admitted to respondent school. Nowhere does she allege that she was ever admitted to respondent school or that she was expelled therefrom. On the contrary, she alleges that she "demanded admission thereto" and that Superintendent Knox, "acting by, through and under orders given by the board of education aforesaid, for and in behalf of the respondent school district aforesaid, has denied and now denies her the right to enter said high school." She does allege that respondent school district has applied for fifty dollars per nonresident pupil, but there is no allegation that relator was among the pupils included in such application. She does not allege that the State has paid respondent school district any part of her tuition, her allegation in this respect being that the State "has paid or will pay some part thereof." The only reference to payment of tuition by the sending

school district is the wholly ambiguous allegation that it "has paid and is now ready, willing and able to pay to the respondent district for petitioner's tuition in respondents' school the sum of $25.00 for the current school year in the manner and upon the terms prescribed by law." It is plain that under the statute no tuition for relator could be paid respondent school district, either by the State or the sending school district, unless and until she was admitted to and attended that school. Hence, we must take the facts to be that relator was never admitted to respondent school and that no part of her tuition was ever paid such school.

■ Recurring to the question of whether a high school is compelled to admit nonresident pupils if it accepts state aid, notwithstanding relator's present attitude that it is not within the scope of the pleadings we are not inclined to permit the case to ride off on such a summary disposition. We think the question is and should be ruled as within the issues here pleaded, especially in view of the doubt and confusion with reference thereto now existing in school circles.

Respondents contended on the first submission and still contend that high schools, even though they receive state aid, are not compelled to admit nonresident pupils, and that, notwithstanding above Section 16 of the Act of 1931, they are authorized by Section 9207, Revised Statutes 1929, to make payment of tuition by the nonresident pupil or his parents a condition precedent to his admission, inasmuch as Section 9207 provides, among other things, that a school board "may admit pupils not resident within the district, and prescribe the tuition fee to be paid by the same."

The pleadings disclose that when respondents were advised that under the appropriation made by the General Assembly for the school year 1933-34 the amount they would receive per nonresident pupil would be approximately $12.50 instead of $50, they proceeded on the theory that they could, even though proceeding under said Section 16 of the Act of 1931, exercise all the powers conferred by said Section 9207, and made an order charging each nonresident pupil applying for admission what they termed an "incidental fee" of $3 per month for the purpose of supplying in part the deficiency of approximately $37.50 per nonresident pupil in the State's appropriation for that school year. It may be here observed that for the purposes of this proceeding the three dollar charge designated by respondents as an "incidental fee" should be regarded as a tuition fee. It was to be paid by each nonresident pupil as a condition precedent to admission, and counsel for respondents necessarily treat the charge as tuition when they seek to defend the order by invoking the above-quoted provision of Section 9207.

We do not think that respondents' reliance upon Section 9207 for

authority to require relator to pay tuition is well grounded. If respondents admit relator they must do so under the provisions of Section 16, because it is conceded that respondent school district receives state aid and Section 16 expressly provides that the provision of the act, of which it is a part, regarding the payment of tuition "shall apply if the students attend any school supported wholly or in part by state funds."

Now, although Section 16 contains no express provision that a nonresident pupil shall not be required to pay tuition, it does provide a complete and apparently exclusive scheme for its payment, First, it unequivocally requires the district of residence to (italics ours) *"pay the tuition of each and every pupil* resident therein who has completed the work of the highest grade offered in the school or schools of said district and attends an approved high school in another district of the same or an adjoining county where work of one or more higher grades is offered." Second, it expressly limits the amount of tuition by providing that (italics ours) "the rate of *tuition paid* shall not exceed the per-pupil cost of maintaining the school attended, less a deduction at the rate of fifty dollars for the entire term, which deduction shall be added to the equalization quota of the district maintaining the school attended, as calculated for the ensuing year, . . . and the cost of maintaining the school attended shall be defined as the amount spent for teachers' wages and incidental expenses. In case of any disagreement between districts as to the amount of tuition to be paid, the facts shall be submitted to the state superintendent of schools, and his decision in the matter shall be final." Third, as already stated, it specifies that (italics ours) "the provision of this act regarding the *payment of tuition* . . . shall apply if the students attend any school supported wholly or in part by state funds." A complete scheme for the payment of the tuition of nonresident pupils thus having been provided we cannot escape the conclusion that it was intended to be exclusive and that respondents are without power to charge tuition in any other way. With respect to payment of tuition of nonresident pupils the provisions of old Section 9207 and Section 16 of the new law are inconsistent and the later enactment must prevail.

It is true that in the present condition of the State's revenue the ambitious hope, which seems to have inspired Section 16 of the Act of 1931, that gratuitous instruction would be thus afforded nonresident attending pupils, becomes highly illusory. But the remedy is legislative rather than judicial. If unforeseen difficulties have disrupted the plan it may be repaired or changed by appropriate legislation. We should not try to meet the emergency by judicial misinterpretation of the plan.

However, as we have already suggested, even though respondents

are without legislative authority to require relator or her parents to pay tuition, it does not necessarily follow that they can be compelled to admit her. It is now conceded by all parties hereto that the provision in Section 16 for payment by the State of $50 tuition per nonresident attending pupil is in reality state aid to the sending district and not to the receiving district. With this concession in mind Section 16 will be searched in vain for any provision indicating that respondents are under any legal duty or compulsion to admit relator. It is true that Sections 9399 and 9400, Revised Statutes 1929, in effect prior to passage of the above-mentioned Act of 1931, provided state support graduated in amounts up to $800 for certain school districts to maintain high school, upon the express condition, among others, that nonresident pupils be admitted upon "payment of a reasonable tuition fee." But this form of state aid is not available, and hence the conditions attached are not operative, where nonresident pupils attend under the provisions of Section 16 of the Act of 1931. Though repeatedly questioned at the rehearing as to other forms of state aid received by respondent school district, counsel for relator and the Attorney-General have failed to cite any that would place respondents under mandatory legal obligation to admit relator, or to state any valid reason why respondent school district, even though it receives state aid, should be compelled to admit nonresident pupils.

It follows from the foregoing that other questions suggested in the briefs need not be discussed, and that our alternative writ herein should be quashed. It is so ordered. All concur.