

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI ex rel.
APRIL L. COLEMAN,　　　　　　　　　)　　　*Opinion issued March 5, 2019*
　　　　　　　　　　　　　　　　　　)
　　　　　　　Relator,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　No. SC97198
　　　　　　　　　　　　　　　　　　)
THE HONORABLE　　　　　　　　　　)
WENDY L. WEXLER HORN,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Respondent.　　　　　　)

**ORIGINAL PROCEEDING IN PROHIBITION**

Relator, April Coleman, seeks a writ of prohibition preventing the circuit court from taking any action in this case other than discharging her from probation.

During Coleman's term of probation, the division of probation and parole issued four notices of citation, none of which resulted in the issuance of probation violation warrants or the suspension of Coleman's probation. The division issued a field violation report in June 2016 resulting in the circuit court suspending Coleman's probation and issuing a capias warrant for her arrest. A probation violation hearing was scheduled for February 2018. Coleman filed a motion to be discharged from probation, which the circuit court overruled. This Court issued a preliminary writ.

Based on the record, the notices of citation were not "initial violation reports" or "violation reports" pursuant to section 217.703.[1]  The division's issuances of notices of citation did not stop the accrual of earned compliance credits (ECCs) pursuant to section 217.703 because Coleman was not out of compliance with the terms of her probation.  After the May 2016 optimal discharge date, the circuit court did not have the authority in February 2018 to hold a probation revocation hearing, and further, the circuit court should have discharged Coleman from probation.  This Court makes permanent its preliminary writ of prohibition.

## Background

Coleman pleaded guilty to one count of the Class C felony of distribution of a controlled substance in October 2013.  She was given a suspended imposition of sentence and placed on five years' probation under the supervision of the division of probation and parole.

From January 2014 to September 2014, the division filed with the circuit court three case summary reports.  Each listed Coleman's optimal discharge date as May 1, 2016, indicating she would be discharged from her probation on this date should she be awarded ECCs during each month of her probation.  In April 2015, the division issued the first document titled "Notice of Citation."  In the notice, Coleman was cited for a positive urinalysis for tetrahydrocannabinol (THC) and nonpayment of monthly intervention fees.  Later that month, the division issued a fourth case summary report, in

---

[1] All statutory references are to RSMo 2000, unless otherwise specified.

2

which Coleman's optimal discharge date remained May 1, 2016. The division issued three more notices of citation in November 2015, February 2016, and April 2016. In the November 2015 notice, Coleman was cited for testing positive for THC and failing to report as directed. In the February 2016 and April 2016 notices, Coleman was cited for admitting to the use of marijuana and failing to report as directed. No probation violation warrants were issued as a result of any of the notices of citation.

In June 2016, the division issued a document titled "Field Violation Report," which was filed with the court in August. The report did not include an earned or optimal discharge date but noted an earned discharged date would be established when Coleman paid her restitution in full. The report further noted that Coleman would not be awarded ECCs until her costs were paid. The probation officer recommended "capias, suspension" and provided that a probation violation warrant would be issued. The circuit court issued an order suspending Coleman's probation and ordering issuance of a capias warrant for her arrest. The order set a revocation hearing for September. On the date of the hearing, the circuit court took notice the warrant had not been served, and the cause was passed generally pending service of the warrant.

A probation violation hearing was scheduled for February 2018. Before the hearing, Coleman filed a motion to be discharged from probation, arguing the circuit court lacked authority to have suspended her probation. Coleman argued that under section 217.703 she was entitled to ECCs during the four months the division issued a notice of citation, effectuating her discharge in May 2016, prior to both the submission of the field violation report and order suspending her probation. The circuit court issued an

3

order overruling Coleman's motion, which determined a notice of citation has the same meaning as a "violation report" for purposes of section 217.703. The circuit court rescheduled the probation revocation hearing.

Coleman filed a petition for a writ of prohibition or, in the alternative, a writ of mandamus in the court of appeals, seeking to bar the circuit court from holding a probation violation hearing and from taking any action other than discharging her from probation. The court of appeals denied Coleman's petition. This Court issued a preliminary writ. Coleman now seeks a permanent writ of prohibition from this Court barring the circuit court from holding a probation violation hearing and from taking any action in this case other than discharging her from probation.

**Jurisdiction and Standard of Review**

This Court has jurisdiction to "issue and determine original remedial writs." Mo. Const. art. V, sec. 4. A writ of prohibition may issue to: (1) "prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction;" (2) "remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended;" or when (3) "a party may suffer irreparable harm if relief is not granted." *State ex rel. Strauser v. Martinez*, 416 S.W.3d 798, 801 (Mo. banc 2014).

**Analysis**

This case presents the question whether the issuance of notices of citation to Coleman resulted in her remaining in compliance for purposes of the division's calculation of ECC accrual. The division issued to Coleman notices of citation in April

4

2015, November 2015, February 2016, and April 2016.  The awarding of ECCs is governed by section 217.703.

Section 217.703.1 provides:

1.  The division of probation and parole shall award compliance credits to any offender who is:

(1) Not subject to lifetime supervision . . .

(2) On probation, parole, or conditional release for [certain offenses, including distribution of a controlled substance];

(3) Supervised by the board; and

**(4) In compliance with the conditions of supervision imposed by the sentencing court or board.**

(Emphasis added).

There is no dispute Coleman met the requirements in section 217.703.1(1), (2), and (3).  The issue is whether, under section 217.703.1(4), Coleman was "[i]n compliance with the conditions of supervision imposed by the sentencing court or board."  If Coleman was "in compliance" from the beginning of her probation in November 2013 through April 2016, then, pursuant to section 217.703.3,[2] she accrued sufficient ECCs to reduce her five years' probation term by 30 months and effectuate her discharge in May 2016.  After that date, the circuit court lacked authority to revoke her probation.  *See*

---

[2] Section 217.703.3 provides:

3. Earned compliance credits shall reduce the term of probation, parole, or conditional release by thirty days for each full calendar month of compliance with the terms of supervision.  Credits shall begin to accrue for eligible offenders after the first full calendar month of supervision or on October 1, 2012, if the offender began a term of probation, parole, or conditional release before September 1, 2012.

5

*Strauser*, 416 S.W.3d at 801 ("When the probation term ends, so does the court's authority to revoke probation.").

To determine the meaning of "in compliance," section 217.703.4 and section 217.703.5 are instructive. Section 217.703.4 provides, "For the purposes of this section, the term *'compliance' shall mean the absence of an initial violation report* submitted by a probation or parole officer during a calendar month, or a motion to revoke or motion to suspend filed by a prosecuting or circuit attorney, against the offender." (Emphasis added). Further, section 217.703.5 provides, "Credits shall not accrue during any calendar month in which a *violation report* has been submitted or a motion to revoke or motion to suspend has been filed . . . ." (Emphasis added).

Neither a motion to revoke nor a motion to suspend was filed in Coleman's case prior to her optimal discharge date in May 2016. But the parties dispute whether the division submitted an "initial violation report" or "violation report" prior to her optimal discharge date. Although four notices of citation were issued to Coleman prior to her optimal discharge date, she argues the notices of citation were neither initial violation reports nor violation reports, as used in section 217.703.4 or 217.703.5. Accordingly, she asserts she was in compliance pursuant to section 217.703.1(4) and was entitled to ECCs for all the months during her probation term from November 2013 through April 2016 to shorten her probation and effectuate her discharge in May 2016 pursuant to section 217.703.3. Coleman argues the circuit court lacked authority to suspend her probation after May 2016.

6

## *I. Notice of Citation vs. Field Violation Report*

During Coleman's probationary term, she was issued four notices of citation, and a month after her optimal discharge date of May 2016 had passed, she was issued a document titled "Field Violation Report." The content of the notices of citation differed from the field violation report in many respects, including their titles, information conveyed, and overall format. Each notice of citation was designated as such on the docket. The notices of citation were each shorter than one page and included only the basic information regarding the case, the violations eliciting the report, and a "Client Action Plan," which provided instructions such as to abstain from illicit substances, continue to pay court costs and intervention fees, and report as required.

In contrast, the field violation report, totaling three pages of information, was more thorough than the notices of citation. The field violation report included a line near its top stating "Type of Report: Initial," and it was designated as a field violation report on the docket. The field violation report also listed the particulars of Coleman's alleged violation of failing to report as directed, Coleman's statements regarding the alleged violation, and a section listing the past citations. Most importantly, unlike the notices of citation, the field violation report recommended further action by the probation officer, including an "Officer Recommendation" of "capias, suspension" and issuance of a "probation violation warrant."

In this case, the field violation report, in comparison to the notices of citation, had a different function. The four notices of citation did not reference ECCs and did not

prompt revocation or suspension of Coleman's probation.[3] But the filing of the field violation report halted Coleman's ECC accrual and resulted in the circuit court suspending Coleman's probation and ordering a capias warrant for her arrest.

Although titled "Field Violation Report," its "Type of Report: Initial" line indicated it was intended to be an initial violation report as provided for in section 217.703.4. It is clear from the record that, in this case, the field violation report differed from the notices of citation in form, substance, and purpose. Only the document titled "Field Violation Report" was an initial violation report as contemplated by section 217.703.4.

The record is devoid of evidence regarding why the division chose to file any of the four notices of citation versus issuing a field violation report whenever Coleman was charged with a probation violation. The violations precipitating each notice of citation were testing positive for THC and nonpayment of monthly intervention fees in April 2015; testing positive for THC and failing to report as directed in November 2015; and admitting to the use of marijuana and failing to report as directed in February 2016 and April 2016. After the four notices of citation were filed, the division issued the field violation report in Coleman's case, listing an alleged violation of the failure to report as directed. That same violation had previously prompted the filing of three of the earlier notices of citation. This Court cannot speculate in this case why the alleged violation of

---

[3] Further, at oral argument, counsel for Coleman emphasized that it was not common practice in the 24th Judicial Circuit for a notice of citation to trigger the suspension of probation.

8

failing to report as directed, which occurred after the filing of four notices of citation, prompted the filing of a field violation report.

Regardless of the division's rationale for filing each document, it is apparent that under the facts of this case, the division and circuit court utilized the two documents differently, as the filing of the notices of citation resulted in no further action against Coleman, while the field violation report resulted in the circuit court suspending Coleman's probation and ordering a capias warrant for Coleman's arrest.[4]

The State argues this Court should find that the notices of citation were violation reports for purposes of section 217.703 because it should not be necessary for a document to be explicitly labeled "initial violation report" to qualify as an initial violation report under section 217.703.4. While a document's title is typically telling of its purpose, the document's form, substance, and purpose are more determinative.

While references to initial violation report and violation report are found in section 217.703.4 and section 217.703.5 respectively, the term "notice of citation" is not mentioned anywhere in the statutes. "Notice of citation" is mentioned once in the code of state regulations in 14 CSR 80-5.020(1)(I)(4). This regulation addresses the procedure for collecting offenders' intervention fees and provides, in pertinent part, "When willful nonpayment occurs over a period of ninety (90) consecutive days, the supervising officer

---

[4] Because the division and circuit court utilized the two documents differently, the dissent's argument that it is immaterial whether the board filed a notice of citation or a field violation report is misplaced. Slip op. at 6 n.4. In this case, the division's decision to file a field violation report, rather than a notice of citation, *was* material as to the resulting actions taken against Coleman.

9

shall submit *notice of citation* or *violation report*." 14 CSR 80-5.020(1)(I)(4) (emphasis added). By using both "notice of citation" and "violation report" in the regulation, the department of corrections recognized the existence of these two distinct document types.

The State argues an initial violation report is simply the first report of a particular violation, whether in a notice of citation or a field violation report. To support this assertion, the State cites section 217.718.3, which indicates a "violation report" is "a written report detailing in what manner the offender has violated the conditions on parole, probation, or conditional release and advis[ing] the offender of the right to a hearing before the court or board prior to the period of detention." But section 217.718 does not support the State's position that a notice of citation is an initial violation report pursuant to section 217.703.4 for two reasons. First, the notices of citation did not meet section 217.718.3's description of "violation report" because none of the notices of citation advised the offender of the right to a hearing. Second, section 217.718.3 merely outlines the information the division should give a probationer, including a right to a hearing on the alleged violation. The statute does not mention a notice of citation, much less equate it to an initial violation report for purposes of ECC accrual under section 217.703.

According to the dissent, Coleman was not entitled to ECCs during the months she was issued notices of citation because during these months Coleman was not adhering "to all conditions of supervision imposed by the court or the division." Slip op. at 5. But this is not required under section 217.703.1(4). Compliance "is not defined as the strict fulfillment of each and every term of probation in a given month but is defined as the absence of an initial violation report or a motion to revoke or suspend." *State ex rel.*

10

*Parrott v. Martinez*, 496 S.W.3d 563, 569 (Mo. App. 2016) (citing section 217.703.4).  If the legislature intended the division not to award ECCs each time a probationer disobeyed a condition of supervision, it could have so provided.  When Coleman was issued notices of citation, she remained in compliance for purposes of ECC accrual under the terms of section 217.703.1(4).

The dissent is correct that, under section 217.703, the division, and not the circuit court, had the duty to calculate and award Coleman's ECCs.  Slip op. 7-8. While it is the division's duty to award ECCs, the circuit court's ruling that a notice of citation is a "violation report," rendering Coleman to be out of compliance for purposes of ECC accrual, was incorrect as a matter of law.  For the reasons above, the notices of citation were not "violation reports" or "initial violation reports" pursuant to section 217.703.4 and 217.703.5.  Accordingly, when the division issued notices of citation, Coleman remained in compliance pursuant to section 217.703.1(4).

Further, the record suggests the division adhered to the language of section 217.703 and awarded ECCs when Coleman was issued notices of citation.  The final case summary report was issued in April 2015, after the division issued the first notice of citation but before the issuance of the field violation report. This case summary report referenced the earlier notice of citation for failing to pay intervention fees and testing positive for THC.  Importantly, it provided that the *optimal* discharge date remained May 1, 2016, and did not halt Coleman's accrual of ECCs.[5]  Additionally, unlike the field

---

[5] The dissent emphasizes that this final case summary report provided Coleman's *earned* discharge date was June 21, 2017.  Slip op. at 9.  But the earned discharge date merely indicates

11

violation report, the notices of citation did not reference that ECCs would not be awarded. The field violation report indicated Coleman was no longer in compliance by providing that ECCs would not be awarded until Coleman's court costs were paid in full.[6] In this case, the usage of the notice of citation differed from the field violation report, and as a result, the notices of citation were not initial violation reports or violation reports pursuant to section 217.703. Accordingly, each month that the division issued a notice of citation, Coleman was in compliance pursuant to section 217.703.1(4) and was entitled to ECCs. After Coleman's probation term ended in May 2016, the circuit court lacked authority over her to hold a probation violation hearing. *Strauser*, 416 S.W.3d at 801.

### II. Amendment of Section 217.703.4

The difference between a notice of citation and violation report is further distinguished by a recent statutory change. Subsequent to the events of this case, the legislature amended section 217.703.4, effective August 28, 2018. The amended version provides, "For the purposes of this section, the term 'compliance' shall mean the absence

---

the number of ECCs accrued up to that point in time. Coleman was entitled to ECCs after the division issued the final case summary report in April 2015 until her optimal discharge date of May 1, 2016.

[6] The dissent argues that the field violation report's October 14, 2018, discharge date suggested the division no longer recognized any accrued ECCs up to that date. Slip op. at 9. The field violation report provided, in pertinent part, "The court has issued an order prohibiting Coleman from being awarded earned credits until court cost is paid in full. Accordingly, Coleman will not discharge from supervision until 10/14/18. Should Coleman pay restitution in full before this date, an earned discharge date will be established." Importantly, the field violation report did not reference a rescission of prior earned ECCs but explicitly stated that an earned discharge date would be established. Further, the field violation report was filed three months after Coleman should have been discharged from probation.

12

of an initial violation report **or notice of citation** . . . ." Section 217.703.4, RSMo 2016 (new language in bold). Under the amended version, in addition to the submission of an initial violation report, submission of a notice of citation has been added to the statute to also indicate when a probationer is not in compliance.

Although the amended version of section 217.703.4 does not apply to this case,[7] the amendment, by naming both documents, demonstrates the legislature viewed the two types of documents differently. Later statutory amendments can reinforce the legislature's intent indicated by the statute's plain language. *State ex rel. Jackson Cty. v. Spradling,* 522 S.W.2d 788, 791 (Mo. banc 1975) (emphasizing that statutes passed during subsequent legislative sessions can be used to understand the meaning of an earlier statute); *Mo. Div. of Employment Sec. v. Labor & Indus. Relations Com'n of Mo.,* 637 S.W.2d 315, 318 (Mo. App. 1982) (utilizing legislative history of a statute's amendment to understand the legislature's intent of the earlier version of a statute; holding the decision of the legislature to retain the term "ratio" in the amended version of the statute after the senate had attempted to amend the term to "percentage" indicated the legislature recognized the difference between the two terms). The decision to add "notice of citation" to the statute with the existing term "initial violation report" indicates that notices of citation and initial violation reports do not have the same meaning and are not used interchangeably.

---

[7] Because "notice of citation" was added to section 217.703.4 to indicate when a probationer is not in compliance, the issue decided in this case is unlikely to arise in future cases.

13

Further, when the legislature amends a statute, that amendment is presumed to change the meaning of the law. *Cox v. Dir. of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003). A recent decision from the court of appeals suggests the legislature changed the law when it amended the statute to provide that issuance of a notice of citation indicates a probationer is not in compliance. *State ex rel. Hawley v. Chapman*, __ S.W.3d __, 2018 WL 5259204, at *5 n.5 (Mo. App. 2018) ("A lack of Notice of Citation was not included in the definition of compliance until the August 2018 amendments. This suggests that an offender could receive a Notice of Citation and still be in compliance prior to the 2018 amendments.").[8] Though the amended version of section 217.703.4 does not apply to this case, the amendment is helpful in understanding the meaning of the prior, applicable version of section 217.703.4. The applicable version of section 217.703.4 provides that only an initial violation report indicates a probationer is not in compliance. That statute does not mention a notice of citation. Accordingly, when the division issued the notices of citation, Coleman remained in compliance pursuant to section 217.703.4.

---

[8] The dissent suggests the amendment may have clarified, rather than changed, the law. Slip op. at 6-7 n.5. But as stated above, the presumption is that the legislature changed the law. *Cox*, 98 S.W.3d at 550. This presumption has not been overcome in this case, as it was in *Hillman* and *Long*, in which the legislature clarified the law because its amendment resolved a conflict between two statutes. *State ex rel. Hillman v. Berger* and *State ex rel. Long v. Copeland*, __ S.W.3d __ (Mo. banc 2019) (Nos. SC97171 and SC97331, decided February 13, 2019). Here, there is no such conflict. Had the legislature intended to clarify that a notice of citation was a "violation report," as used in section 217.703.4 and section 217.703.5, it could have so provided. Instead, the legislature amended the statute to state that the issuance of either an initial violation report *or* a notice of citation indicates an offender is not in compliance.

## Conclusion

Under the record here, the notices of citation were not initial violation reports or violation reports under section 217.703.4 and section 217.703.5. During the months the division submitted a notice of citation, Coleman remained in compliance pursuant to section 217.703.1(4). Because Coleman was in compliance, she was entitled to ECCs each month of her probation until May 2016, when she should have been discharged. A few months later, the circuit court, after reviewing the field violation report, ordered suspension of Coleman's probation and ordered her to appear at a hearing. After May 2016, the circuit court lacked authority over Coleman and could not hold a hearing to revoke her probation. The circuit court's order was incorrect as a matter of law. The circuit court is prohibited from taking any action in this case other than discharging Coleman from probation. This Court makes permanent its preliminary writ of prohibition.

_____

Mary R. Russell, Judge

Draper, Breckenridge and Stith, JJ., concur;
Powell, J., dissents in separate opinion
filed; Fischer, C.J., and Wilson, J., concur
in opinion of Powell, J.

15



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI ex rel.    )
APRIL L. COLEMAN,    )
   )
       Relator,    )
   )
v.    )     No. SC97198
   )
THE HONORABLE    )
WENDY L. WEXLER HORN,    )
   )
       Respondent.    )

## DISSENTING OPINION

I respectfully dissent. The principal opinion concludes Coleman was never out of compliance with the terms of her probation solely because the four notices of citation submitted to the circuit court by the division of probation and parole do not constitute "initial violation reports" as that phrase is used in § 217.703.4.[1] The principal opinion disregards the fact Coleman was repeatedly cited for unlawfully using illicit substances in direct violation of the express terms of her probation. By characterizing an initial violation report as a particular, unique, and distinct document, the principal opinion elevates form over substance. In addition, the principal opinion ignores the statutes governing earned

---

[1] All statutory references are to RSMo 2000, as amended, unless otherwise specified.

compliance credits, which charge the division of probation and parole, not the circuit court, with awarding and calculating compliance credits. For this reason, Coleman must show the division actually awarded sufficient compliance credits to warrant discharge of her probation. Because the record is unclear, at best, whether the division allotted any compliance credits to Coleman, she has not met her burden. Therefore, Coleman is not entitled to either a writ of prohibition or a writ of mandamus, and I would quash the preliminary writ and permit the circuit court to proceed with Coleman's probation revocation hearing.

Coleman seeks relief from this Court in the form of a writ of prohibition or, alternatively, a writ of mandamus. It is well-established "[p]rohibition is a discretionary writ that may be issued to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent the exercise of extra-jurisdictional authority." *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 330 (Mo. banc 2009). Similarly, a litigant seeking a writ of mandamus must show she has "a clear, unequivocal, specific right to a thing claimed." *U.S. Dep't of Vet. Affairs v. Boresi*, 396 S.W.3d 356, 359 (Mo. banc 2013). In either case, writ relief is an extraordinary remedy, and "courts should employ the writ judiciously and with great restraint." *Bickel*, 285 S.W.3d at 333. This Court, therefore, should issue an extraordinary writ only "when the facts and circumstances of the particular case demonstrate unequivocally that there exists an extreme necessity for preventive action," *id*. at 333-34, or when the right sought to be enforced is "definite, arising under conditions admitted or proved and imposed by law." *State ex rel. Robinson v. Lindley-Myers*, 551 S.W.3d 468, 474 (Mo. banc 2018). "Absent such conditions, [this Court] should decline

2

to act." *Bickel*, 285 S.W.3d at 334. In this case, Coleman has not established she is entitled to this extraordinary remedy.

Coleman argues the circuit court lacks authority to conduct the probation violation hearing because her probation has expired due to the accrual of compliance credits. In the alternative, Coleman claims "§ 217.703 RSMo. gives her an unequivocal right to earn ECCs and be discharged from probation early."[2] But "[p]robation is a privilege, not a right." *State ex rel. Delf v. Missey*, 518 S.W.3d 206, 211 (Mo. banc 2017). In exchange for a second chance, a probationer's "acceptance of probation subjects him or her to the conditions imposed by the circuit court." *Id*. Here, the circuit court's probation order, among other requirements, required Coleman to refrain from the use of all illicit substances. Yet Coleman tested positive for THC at least twice and admitted to using marijuana two more times over the course of 11 months.[3] These probation violations, which were enumerated in reports submitted to the circuit court, prohibited the accrual of earned compliance credits during the four months in question. Regardless, the record before this Court is unclear whether the division of probation and parole allotted any earned compliance credits to Coleman when the circuit court took up her motion to be discharged from probation, let alone during the months Coleman violated conditions of her probation by using marijuana. For this reason, Coleman has not established that she received

---

[2] Coleman makes this claim notwithstanding § 217.703.8, which provides "[t]he award or rescission of any credits earned under this section shall not be subject to appeal or any motion for postconviction relief."

[3] The principal opinion recognizes these transgressions as violations of Coleman's probation and, indeed, even labels them "violations." Slip op. at 8.

3

sufficient credits from the division to warrant discharge from probation, and she is not entitled to writ relief.

**A. Notices of citation prohibit the accrual of earned compliance credits**

Under chapter 217, the division of probation and parole shall award earned compliance credits to a probationer if she is "[i]n compliance with the conditions of supervision imposed by the sentencing court or board," among other requirements. § 217.703.1(4). Section 217.703.4 provides in pertinent part, "For the purposes of this section, the term 'compliance' shall mean the absence of an initial violation report submitted by a probation or parole officer." Coleman argues, therefore, she was never out of compliance with the terms of her probation solely because no document titled "initial violation report" was submitted to the circuit court. Even a passing review of the record, however, reveals Coleman clearly violated the terms of her probation, all of which were adequately documented by the citations she received and which the division submitted in a report to the circuit court.

Although § 217.703.4 deems a probationer to be in compliance with the terms of her supervision unless a probation officer submits an "initial violation report," the principal opinion's conclusion that a probationer is in compliance in the absence of a particular, unique, and distinct document is unwarranted. Other subsections of § 217.703 are instructive on this issue. Section 217.703.5 prohibits compliance credits from accruing "during any calendar month in which a **violation report** has been submitted." § 217.703.5 (emphasis added). Section 217.703.1(4) directs the division of probation and parole to award credits "to any offender who is … [i]n compliance **with the conditions of**

4

**supervision imposed by the sentencing court or board**." (Emphasis added). Section 217.703.3 provides earned compliance credits "shall reduce the term of probation … by thirty days for each full calendar month of **compliance with the terms of supervision.**" (Emphasis added). Clearly, the overall scheme of § 217.703 is for the division of probation and parole to award compliance credits only if a probationer adheres to all conditions of supervision imposed by the court or the division. When a probationer fails to adhere to the conditions of supervision enumerated in the circuit court's order of probation and an "initial violation report" or other "violation report" is submitted to the circuit court, § 217.703 specifically prohibits the award of earned compliance credits.

Neither the phrase "initial violation report" nor "violation report" is defined in chapter 217. When the legislature leaves a statutory word or phrase undefined, this Court will attribute to those words "their plain and ordinary meaning as found in the dictionary to ascertain the intent of lawmakers." *Howard v. City of Kansas City*, 332 S.W.3d 772, 780 (Mo. banc 2011); *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. banc 1993).

Applying the plain meaning of "violation" and "report" to those terms as used in § 217.703 reveals "violation report" means nothing more than a statement or account of an infringement or transgression. *See* WEBSTER'S THIRD NEW INT'L DICT. 1925 & 2554 (2002). Given a violation report is merely a statement documenting a probationer's infringements on the terms of her probation, it is difficult to understand how Coleman's four citations do not fit the dictionary definition of a violation report. Nevertheless, the principal opinion concludes the notices of citation submitted to the circuit court in this case were not violation reports despite the notices most certainly being documents reporting

5

Coleman violated conditions of her probation.[4] The citations expressly informed the circuit court Coleman failed to adhere to the terms of her probation by testing positive for an illicit substance on multiple occasions. The circuit court, therefore, did not abuse its discretion by holding the notice of citations were violation reports, and Coleman has failed to demonstrate she had an unequivocal right to earned compliance credits during the months in question or the circuit court lacked authority to conduct the probation revocation hearing.[5]

---

[4] The principal opinion also suggests the length of the field violation report, three pages, versus the length of the notices of citation, shorter than one page, and the subsequent action by the circuit court to initiate revocation proceedings after the field violation report but not after the notices of citation have some bearing on their meaning. Section 217.703, however, does not require the report notifying the circuit court of probation violations to be any certain length or result in any adverse action to the probationer before accrual of compliance credits is limited by the statute. All the violations reported in the notices of citation would have justified the division to issue a warrant for Coleman's arrest. *See* § 217.722.1 ("If any probation officer has probable cause to believe that the person on probation has violated a condition of probation, the probation officer may issue a warrant for the arrest of the person on probation."). Accordingly, if Coleman's conduct would justify the issuing of an arrest warrant, it is immaterial whether the division filed a notice of citation or a field violation report to enumerate the violations of probation. Likewise, it is immaterial that the circuit court initiated revocation proceedings after the division submitted a field violation report verses a notice of citation. The fact remains Coleman was clearly noncompliant with the terms of her probation as set out in the reports issued by the division and submitted to the circuit court in May 2015, November 2015, February 2016 and April 2016 regardless of whether they were titled notices of citation or violation reports.

[5] The principal opinion highlights the recent amendment to § 217.703 which specifies a notice of citation prohibits the accrual of earned compliance credits. While the principal opinion suggests this amendment supports its interpretation of the previous version of the statute, this position ignores the possibility the legislature made the change in the law to *clarify* the former version of the statute and not change it. *See Mid-America Television Co. v. State Tax Com'n*, 652 S.W.2d 674, 679 (Mo. banc 1983) (acknowledging "the purpose of a change in the statute can be clarification"); *see also Mann v. McSwain,* 526 S.W.3d 287, 292 (Mo. App. 2017) (holding the legislature's 2003 amendment to § 556.061 adding assault on a law enforcement officer to the list of dangerous felonies was not a substantive

6

**B. The division of probation and parole, not the circuit court, is responsible for the award and calculation of earned compliance credits.**

The principal opinion also overlooks who is required to award and calculate Coleman's earned compliance credits. Chapter 217 charges the division, not the circuit court, with the responsibility to determine eligibility for earned compliance credits. Section 217.703.1 specifically states, "**The division of probation and parole** shall award earned compliance credits …." (Emphasis added). Additionally, § 217.703.9 provides, "At least twice a year, **the division** shall calculate the number of months the offender has remaining on his or her term of probation, parole, or conditional release, taking into consideration any earned compliance credits." (Emphasis added). Chapter 217, therefore, vests the division with control over the accrual of earned compliance credits. It was not the circuit court's duty or responsibility to award or calculate Coleman's earned compliance credits.

A circuit court is "afforded broad discretion with respect to the disposition it may make after it determines the defendant is guilty of the offense charged." *Missey*, 518 S.W.3d at 210, *see also* § 557.011.2 (listing five authorized dispositions "[w]henever any person has been found guilty of a felony or a misdemeanor"). While circuit courts are

_____

change but rather a clarification). Indeed, this Court recently affirmed this principle in *State ex rel. Hillman v. Berger* and *State ex rel. Long v. Copeland*, __ S.W.3d __ (Mo. Banc 2019) (Nos. SC97171 and SC97331, decided February 13, 2019). In those cases, this Court, writing unanimously, recognized, "The purpose of a particular change may be to clarify – not change – the existing law." *Id.* at 12. Because a notice of citation is a report from the division detailing how a probationer is in violation of the conditions of probation, it is likely the addition of a notice of citation to §217.703 in the recent amendment is not a substantive change but is merely a clarification of the statute.

7

under no obligation to place an offender on probation, probation provides offenders with an invaluable second chance to avoid "the stigma of a lifetime conviction and the punitive collateral consequences that follow." *Yale v. City of Independence*, 846 S.W.2d 193, 195 (Mo. banc 1993). Thus, probation furthers a compelling public policy and interest, and the utilization of probation should be encouraged when appropriate. This Court should not discourage the imposition of probation by overburdening circuit courts with the responsibility to award and calculate earned compliance credits when our statutes clearly charge the division with this authority.

Instead of arguing the division of probation and parole improperly awarded and calculated her earned compliance credits, Coleman seeks a writ of prohibition precluding the circuit court from taking any further action in her case or, in the alternative, a writ of mandamus directing the circuit court to discharge her from probation. Under either writ standard, Coleman bears the burden of establishing the right to relief. *State ex rel. Eggers v. Enright*, 609 S.W.2d 381, 382 (Mo. banc 1980) (in seeking prohibition, "it is relator's burden to establish that respondent has usurped or acted in excess of his jurisdiction."); *State ex rel. Burnett v. Sch. Dist. of City of Jefferson*, 74 S.W.2d 30, 33 (Mo. banc 1934) (in seeking mandamus, "[t]he burden [is] upon relator to plead and prove a clear legal right to the relief asked."). Therefore, because the division of probation and parole controls the allotment of earned compliance credits, Coleman must establish the division awarded her sufficient credits to warrant writ relief from this Court preventing the circuit court from scheduling and holding a probation revocation hearing and directing the court to discharge

8

her from probation to meet her burden of showing she is entitled to writ relief. Coleman has not met her burden.

No record or report submitted by the division of probation and parole in this case establishes Coleman actually accrued sufficient earned compliance credits to warrant discharge from probation. Although the case summary reports the division submitted to the circuit court indicated Coleman could optimally be discharged from probation on May 1, 2016, with continued supervision compliance, the last case summary report prepared in April 2015 stated Coleman, at that time, had actually only earned credits warranting a discharge date of June 21, 2017. Coleman's probation was suspended on August 15, 2016, well before June 21, 2017, so the case summary reports do not show Coleman actually earned sufficient compliance credits to warrant discharge on May 1, 2016. Coleman, therefore, has not established she is entitled to writ relief.

What is more, despite the case summary reports indicating Coleman had accrued compliance credits, the division submitted a probation violation report dated June 16, 2016, well after the case summary reports were submitted to the circuit court, stating an earned compliance discharge date had not been calculated or established. This report, which was submitted before the circuit court took up Coleman's motion for discharge from probation, stated Coleman's date of discharge from probation was October 14, 2018, the original supervision expiration date set by the circuit court. In light of this probation violation report, the record suggests the division no longer recognized any accrued compliance credits reported in the case summary reports when the circuit court ruled on Coleman's

9

motion to be discharged from probation.[6]  There are no other records or reports before the circuit court or this Court documenting the award or calculation of earned compliance credits by the division.  Accordingly, the record, is, at best, in conflict as to whether the division allotted Coleman any compliance credits warranting an early discharge of her probation.

For this reason, Coleman cannot show she is entitled to be discharged from probation or the circuit court lacked authority to schedule and hold a probation violation hearing.  Section 217.703.7 provides "**once the combination of** time served in custody, if applicable, **time served on probation**, parole, or conditional release, **and earned compliance credits satisfy the total term of probation**, parole, or conditional release, **the board or sentencing court shall order final discharge of the offender**." (Emphasis added).  But § 559.036.8 provides, "The power of the court to revoke probation shall extend for the duration of the term of probation designated by the court."  Therefore, the circuit court retained the authority to revoke Coleman's probation until October 14, 2018.  Because it is the division's ultimate responsibility to award and calculate earned compliance credits and the record is, at best, unclear whether the division allotted any credits, let alone sufficient credits to warrant discharge, Coleman has not met her burden of establishing the combination of the time she served on probation and earned compliance

---

[6]  While Coleman may have been entitled to earned compliance credits despite the division's recognition or calculation, she brings this writ action against the circuit court, not the division.  Because the division is responsible for the award and calculation of compliance credits, the circuit court was entitled to rely on the division's calculation of credits, and Coleman cannot allege the circuit court improperly calculated her credits.

10

credits satisfied her total term of probation. *Eggers*, 609 S.W.2d at 382; *Burnett*, 74 S.W.2d at 33. For this reason, the circuit court did not act in excess of its authority by scheduling a probation revocation hearing, and Coleman is not entitled to be discharged from probation.

For all these reasons, I respectfully dissent.

_____
W. Brent Powell, Judge